STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. CARMELO VELAZQUEZ, DEFENDANT-APPELLANT.

Argued September 9, 1969—Decided October 6, 1969.

*Mr. Gaetano J. Alaimo* argued the cause for the appellant.

*Mr. Alan J. Pogarsky,* Assistant County Prosecutor, argued the cause for the respondent (*Mr. Robert H. Doherty, Jr.,* Ocean County Prosecutor, attorney).

PER CURIAM. The judgment is affirmed for the reasons expressed in the majority opinion of Judge Collester in the Appellate Division.

JACOBS, J., concurring:

Although the members of the Appellate Division agreed on guilt they differed on sentence. Judges Collester and Labrecque found that the trial judge had not improperly exercised his discretion in sentencing the defendant to a term of 1-2 years in the New Jersey State Prison. Judge Gaulkin considered the sentence too severe and filed a dissent brimming with compassion and understanding. 104 *N. J. Super.,* at 581–85. He pointed out that the defendant was a small grocery store operator and had been struggling to make a bare livelihood for himself and his wife, along with their six children ranging from 10 to 17 years of age and all attending school; he indicated that the defendant had had no previous involvement with the law and that there was every likelihood that he had learned his lesson and would thereafter be fully law-abiding; he noted that the blow to the defendant and

his family would be far more devastating than any "problematical incidental damage" to organized gambling; and he concluded with the thought that not only would the defendant not come out of State Prison a better man, but, to the contrary, the miracle would be if he did not come out "a much worse one, embittered by what must appear to him to be a savage sentence." 104 *N. J. Super.*, at 584–85. *See* Hammer, "Role Playing: A Judge Is a Con, A Con Is a Judge," N.Y. Times, Sept. 14, 1969 § 6 (Magazine), at 56; *Menninger, The Crime of Punishment* 73 (1968).

There is much to be said in favor of a comprehensive sentencing revision which might entail the establishment of a specialized sentencing tribunal, either judicial or administrative. *See* Levin, "Toward a More Enlightened Sentencing Procedure," 45 *Neb.L.Rev.* 499 (1966); Hayner, "Sentencing by an Administrative Board," 23 *Law & Contemp. Prob.* 477 (1958); Note, "Sentencing: The Good, The Bad and The Enlightened," 57 *Ky.L.J.* 456, 469–72 (1969). Several years ago the sentencing procedure in gambling cases was altered by the withdrawal of the sentencing power from the trial judge. However, the power was not transferred to a specialized sentencing tribunal, but to another judge who had nothing at all to do with the trial and who had no specialized training or skill in sentencing. I disagreed with that alteration for reasons which I have expressed elsewhere and which, in the light of the passage of time and the experiences to date, I have no hesitancy in reaffirming. *See State v. De Stasio,* 49 *N. J.* 247, 261–62 (concurring opinion), *cert.* denied, 389 *U. S.* 830, 88 *S. Ct.* 96, 19 *L. Ed. 2d* 89 (1967); *see also ABA Project on Minimum Standards for Criminal Justice, Sentencing Alternatives and Procedures* 231–33 (Approved Draft 1968); De Costa, "Disparity and Inequality of Criminal Sentences: Constitutional and Legislative Approaches to Appellate Review and Reallocation of the Sentencing Function," 14 *How.L.J.* 29, 56 (1968).

Despite my continued disagreement, I recognize that under the controlling force of *De Stasio, supra,* the sentencing judge

here, though he was not the trial judge, was lawfully called upon to exercise his own conscientious judgment as to whether the defendant should receive probation, or a term in State Prison, or a lesser term of imprisonment which would at least have kept him out of the State Prison at Trenton (*N. J. S. A.* 2A:164–15) described in *Menninger, supra,* as a 1798 building "now standing as a disgrace to American penology." Judge Gaulkin would have placed the defendant on probation or perhaps have given him a lesser term (104 *N. J. Super.,* at 581), and if I were the sentencing judge I might well have done the same after having carefully weighed "all of the circumstances and all of the societal and individual interests involved." 49 *N. J.,* at 262. But that is not the present issue for the imposition of a sentence involves an exercise of judgment which, under still prevailing precedents, is not to be upset on appeal "in the absence of a clear showing of abuse of discretion." *See State v. Tyson,* 43 *N. J.* 411, 417 (1964), *cert. denied,* 380 *U. S.* 987, 85 *S. Ct.* 1359, 14 *L. Ed. 2d* 279 (1965); *State v. Allen,* 104 *N. J. Super.* 187, 189–90 (*App. Div.*), *aff'd,* 54 *N. J.* 311 (1969). The Appellate Division found no such showing and on the record submitted to this Court, I concur. *Cf. Schuttler v. Reinhardt,* 17 *N. J. Super.* 480 (*App. Div.* 1952): "We would emphasize that it is only in the exceptional case that a discretionary act will lead to a reversal. The circumstance that the appellate judges, had they been presiding at the trial, would have made a contrary ruling, is far from enough to bring about a reversal." 17 *N. J. Super.,* at 485.

JACOBS, J., concurring in result.

*For affirmance*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For reversal*—NONE.