STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. DAVID
E. HUMPHREYS, DEFENDANT-RESPONDENT.

Argued October 6, 1981—Decided April 15, 1982.

*Thomas A. Penn,* Deputy Attorney General argued the cause for appellant (*James R. Zazzali,* Attorney General of New Jersey, attorney).

*Martin T. McDonough* argued the cause for respondent (*McDonough & Lawrence,* attorneys).

The opinion of the Court was delivered by

O'HERN, J.

This case concerns the standard of appellate review in "conditional discharge" cases under Section 27 of the New Jersey Controlled Dangerous Substances Act, *N.J.S.A.* 24:21–1 *et seq.*

On November 13, 1976, the Pennsville police arrested defendant, David E. Humphreys, after a search of his home turned up 27.34 grams of marijuana and .28 grams of hashish. The police were acting on a warrant they had secured based on information received from an informant, Robert Caldwell. On the day before the search, Caldwell had solicited a buy of narcotics from Humphreys and had allegedly bought one ounce of marijuana. At the time of these events Humphreys had been a mathematics teacher at a Pennsville high school for three years. Caldwell was a twenty-year-old former pupil of his.

Following his arrest, Humphreys was charged in separate indictments with possession and sale of a controlled dangerous substance. One indictment accused defendant of distributing one ounce of marijuana to Caldwell, in violation of *N.J.S.A.* 24:21–19 a(1). Defendant's jury trial on this charge resulted in an acquittal.

A separate indictment charged Humphreys with possession of 27.34 grams of marijuana. Possession of less than 25 grams of marijuana is treated as a disorderly persons offense but possession of any amount over 25 grams constitutes an indictable offense. *N.J.S.A.* 24:21–20 a(4).

Defendant pleaded guilty to the possession charge and applied for a conditional discharge pursuant to *N.J.S.A.* 24:21–27. Sentencing was set for June 23, 1978. The presentence report on Humphreys disclosed, *inter alia*, the following: he was 32 years of age, had no prior juvenile or adult record and no prior arrests; he was a decorated veteran with 14 months service in Viet Nam; he admitted prior use of drugs which began in college and increased during his tour of duty in Viet Nam; he further admitted having grown marijuana for personal use, although it was stolen before harvest, and he advocated the legalization of marijuana.

The trial judge denied the motion for a conditional discharge and sentenced the defendant to the Salem County Jail for six months, suspended all but 30 days, placed the defendant on

probation for one year and fined him $200. The defendant appealed both the denial of his motion and his sentence. The Appellate Division affirmed the denial of the motion for conditional discharge but found the sentence excessive and modified it to eliminate the county jail term. Defendant then petitioned this Court for certification of the conditional discharge issue. We granted certification on May 24, 1979, summarily reversed the judgment of the Appellate Division and remanded the case to the trial court "for reconsideration in light of this Court's opinions in *State v. Bender* [80 *N.J.* 84 (1979)] ..., *State v. Maddocks* [80 *N.J.* 98 (1979)] ..., *State v. Sutton* [80 *N.J.* 110 (1979)] ..., and most particularly, *State v. Hermann & Jones* [80 *N.J.* 122 (1979)] ..., all of which were decided this day." *State v. Humphreys*, 81 *N.J.* 269, 269–70 (1979).

The same trial judge conducted a new hearing and again denied defendant's motion for conditional discharge. The court essentially adhered to the reasoning that had initially led it to refuse defendant's request. In a written opinion, the trial judge articulated three reasons for his decision.

First, the court cited Humphreys' occupation as a public school teacher, although there was no evidence that defendant's personal association with drugs involved his current students or his official duties. Next, the trial court ruled that Humphreys' admission into a conditional discharge program was precluded because defendant "was dealing in marijuana" or was otherwise involved in the distribution of narcotics. In support of this finding, the trial judge, who had also presided over Humphreys' distribution trial, referred to three pieces of evidence produced at the earlier proceeding. They were a tape recording of a conversation with Caldwell in which Humphreys made references to drug dealing, testimony alluding to an unsuccessful attempt by defendant to cultivate a six-foot by six-foot garden of marijuana, and defendant's admission to having given one capsule of valium to Caldwell. Finally, the trial judge took "judicial notice" of community anxiety over Humphreys' drug involvement, noting that "because of his position as a school

teacher, organized groups of parents have threatened to keep their children out of school rather than permit them to attend his classes."

Humphreys again sought relief from the Appellate Division. This time, in a *per curiam* opinion, the Appellate Division reversed the denial, holding that the trial court had abused its discretion by taking "judicial notice" of community anxiety about Mr. Humphreys, by improperly evaluating Humphreys' alleged ongoing drug involvement and by basing its denial on other inappropriate or irrelevant factors, such as defendant's occupation as a teacher.

Judge Fritz dissented, stating that the majority had overemphasized the importance of the trial judge's reliance on the defendant's occupation and public outrage, and concluded that while the "conviction of the trial judge overflowed his pen . . . [this] should not be permitted to distract us from the correctness of the determination . . . ."

The case comes before this Court on the State's appeal as of right. *R.* 2:2–1(a). We now reverse.

## I.

*N.J.S.A.* 24:21–27 authorizes the "conditional discharge" of criminal proceedings against certain first-time drug offenders. This provision was enacted in 1970 following adoption of *R.* 3:28 on pretrial intervention (PTI). These programs have been conceptually intertwined ever since, although various characteristics distinguish the two. Unlike PTI, conditional discharge is a legislative creation, it is directed solely at use related drug offenses and it may be invoked without prosecutorial consent or recommendation.[1]

Former Governor Cahill summarized the purpose of this legislation in a special message to the Legislature:

---

[1] The Legislature incorporated pretrial intervention into the new criminal code, which took effect in September 1979. *N.J.S.A.* 2C:43–12.

The proposed [controlled dangerous substances] act takes a first legislative step at recognizing the use of drugs as a social and medical illness. Thus with respect to persons charged with use or possession of any dangerous drug for the first time, the act confers upon the court, new discretionary authority to defer criminal proceedings and to impose a special term of probation. If the conditions of probation are met, the court may then dismiss the proceedings. In order that youthful first offenders are not saddled with a lifetime arrest record, the act provides for an immediate expungement of records with respect to arrests. ["Drug Abuse—Problem of the Decade," Special Message of Governor William Cahill to the Legislature, April 27, 1970.]

Should the trial judge decide to grant a conditional discharge, proceedings against a defendant will be suspended, *N.J.S.A.* 24:21–27 a(1). If a defendant has already been found guilty or entered a plea, judgment of conviction will not be entered, *N.J.S.A.* 24:21–27 a(2). If the terms of treatment are violated, proceedings may be recommenced or judgment of conviction entered. If the treatment is satisfactorily completed, proceedings will be dismissed, *N.J.S.A.* 24:21–27 b. Proceedings against a person may be terminated under this section only once, *N.J. S.A.* 24:21–27 b.

To qualify for consideration for a conditional discharge, a defendant must have no prior drug convictions after the effective date of the act and be charged with, convicted of, or plead guilty to no more than possession, use or being under the influence of small amounts of drugs. *N.J.S.A.* 24:21–27 a.

An application for conditional·discharge may not be approved unless the trial judge finds that the defendant's presence in the community will not threaten the public safety or that the defendant will benefit from participation in a supervisory drug treatment program, the terms of which provide for the protection of the public. *N.J.S.A.* 24:21–27 c, which imposes this requirement, states that:

Proceedings under this section shall not be available to any defendant unless the court in its discretion concludes that

(1) The defendant's continued presence in the community, or in a civil treatment center or program, will not pose a danger to the community; or

(2) That the terms and conditions of supervisory treatment will be adequate to protect the public and will benefit the defendant by serving to correct any dependence on or use of controlled substances which he may manifest.

Even if an application satisfies subsection (c), it remains for the trial court to determine whether the defendant is otherwise a suitable candidate for conditional discharge. *State v. Sayko*, 71 *N.J.* 8, 13 (1976). In making this determination, the court enjoys broad, though not limitless, discretion and should consider a variety of factors so as to assess the defendant as a "whole person." *Id.* at 13. *Cf. State v. Marzolf*, 79 *N.J.* 167 (1979) (in the context of sentencing). Finally, the trial court should support its conclusions with a statement of reasons so that the exercise of this discretion may be subject to meaningful review on appeal. *State v. Sayko, supra*, 71 *N.J.* at 13.

## II.

To establish an abuse of discretion in the analogous context of pretrial intervention a party faces a heavy burden. *State v. Bender*, 80 *N.J.* 84 (1979). In *State v. Sayko, supra*, 71 *N.J.* at 13, we compared this review of conditional discharge proceedings under *N.J.S.A.* 24:21–27 with the standard of review in appellate supervision of sentencing, citing *State v. McBride*, 66 *N.J.* 577, 580 (1975). In the context of sentencing we have said that considerations of policy and practicality dictate that appellate judges should not substitute their judgment for that of the trial court, and that the power of review is one that should be exercised sparingly and only upon a "clear showing of abuse of discretion." *State v. Whittaker*, 79 *N.J.* 503, 512 (1979); *State v. Velazquez*, 54 *N.J.* 493, 495 (1969).

> Appellate deference to the discretionary decision of a sentencing judge is similar, in purpose and origin, to that accorded decisions of a trier of fact. It is based primarily on the sentencing judge's presumed superior ability to make a first-hand evaluation of the background and character of the defendant and the offense. [*State v. Leggeadrini*, 75 *N.J.* 150, 162 (1977)].

On our remand to the trial court we asked that it reconsider the matter in the light of four opinions filed on May 24, 1979: *State v. Bender, supra; State v. Maddocks*, 80 *N.J.* 98 (1979); *State v. Sutton*, 80 *N.J.* 110 (1979); and *State v. Hermann & Jones*, 80 *N.J.* 122 (1979). Each of these cases cited by the Court in its remand concerned judicial review of the prosecutor's decision to admit or deny a defendant to PTI.

In *State v. Bender, supra,* we reversed the prosecutor's denial of admission into pretrial intervention of a licensed pharmacist because the prosecutor misinterpreted pertinent guidelines in concluding that Bender's series of cocaine thefts from his drugstore constituted a continuous criminal enterprise or a "breach of the public trust" arising from his licensed status; but we remanded the matter to the prosecutor for reconsideration of the application under the proper guidelines.

In *State v. Maddocks, supra,* we approved the prosecutor's denial of admission into pretrial intervention of a defendant who had refused to disclose the identity of an accomplice. We pointed out that this factor could bear upon the defendant's amenability to correction. We remanded, however, to permit the defendant to reassess his position on this and to allow the State to specify the nature of the activities underlying the allegations that defendant was on the "periphery" of other criminal investigations.

In *State v. Sutton, supra,* the Court agreed that the prosecutor had properly characterized a welfare client's fraudulent four and one-half year scheme as being a continuous criminal enterprise justifying denial, but we remanded the matter in the light of the insufficiency of the prosecutor's statement of reasons for denial.

We particularly directed the attention of the trial court to *State v. Hermann & Jones, supra,* presumably because it involved two teachers. In that case we held it improper to overturn a prosecutor's decision to admit to pretrial intervention two teachers charged with receipt of stolen goods. In *Hermann & Jones* the trial court had reversed the prosecutor, substituting its own judgment and concluding that the teachers' conduct was a breach of "the special trust reposed in them as school teachers." Implicit in that decision was that one's status as school teacher was not a litmus test for denial of admission into a pretrial diversion program.

These PTI cases restricted appellate supervision of a prosecutor's decision to divert a defendant by permitting reversal only upon a showing of "patent and gross abuse of discretion." A party must show that the prosecutor's decision either failed to account for all the relevant factors, was based on irrelevant of inappropriate factors or constituted a "clear error of judgment." *State v. Bender, supra*, 80 *N.J.* at 93.

Although the "separation of powers" considerations that restrict judicial review of prosecutorial decisions on PTI do not apply here, useful analogies may still be drawn. The same considerations of policy and practicality applicable in the PTI context dictate appellate deference to a trial court's disposition under *N.J.S.A.* 24:21–27. Such dispositions should not be disturbed by an appellate court absent a clear showing of abuse of discretion.

### III.

Reviewing the record under this standard, we conclude that the trial judge did not clearly abuse his discretion in denying this defendant a conditional discharge.

While we agree that it would have been inappropriate to deny defendant admission to a conditional discharge program solely because he was a teacher,[2] this does not mean that a trial court could not consider defendant's occupational status in dealing with such an application. The whole person, not "censored versions of his personal history or selected facets of his character, is to be addressed . . . ." *State v. Marzolf, supra*, 79 *N.J.* at 180. Part of the whole person or character of the defendant as the judge saw it could well include the involvement of Humphreys with a recent pupil, Caldwell, and Humphreys' role model status as a teacher.

---

[2] In *State v. Alston*, 71 *N.J.* 1 (1976), we held that status as a police officer did not mandate denial of admission into a conditional discharge program for drug offenders.

 Nor was it irrelevant or inappropriate for the trial court to consider defendant's previous involvement with narcotics in an overall determination of whether the "whole man" of the defendant was amenable to rehabilitation under this diversionary program. The whole person concept authorizes the sentencing court to comprehend in its deliberations a wide range of information that might otherwise be excluded by evidentiary norms. *State v. Green*, 62 *N.J.* 547, 566 (1973); *State v. Banks*, 157 *N.J.Super.* 442, 449–450 (Law Div.1978). Any such information must come before the court in the due course of its proceedings and the sentencing court should take care to prevent extraneous material from seeping into the process, even if a matter of personal knowledge. *State v. Gattling*, 95 *N.J.Super.* 103, 111 (App.Div.1967).

 Here, whether we characterize defendant's conduct as dealing or distributing, it is sufficient that concrete and reliable evidence was produced that would reasonably lead the court to conclude that defendant's activities extended beyond the mere possession of controlled dangerous substances. *State v. Sayko, supra* ; *State v. Battaglia*, 135 *N.J.Super.* 211 (App.Div.1975); *State v. Banks, supra* ; *State v. DiLuzio*, 130 *N.J.Super.* 222 (Law Div.1974). Obviously, if the defendant had been convicted of distributing drugs, he would have been ineligible for diversion under *N.J.S.A.* 24:21–27 c, *State v. DiLuzio, supra*, 130 *N.J.Super.* at 231. Even absent a conviction, it was not inappropriate for the trial judge to take cognizance of the reliable information that had come to the court in the course of these proceedings. The court is not required "to wear blinders to avoid consideration of the character of defendant's possession. . . ." *State v. Marzolf, supra*, 79 *N.J.* at 185. That view is unrealistic and impractical. It was the defendant who had candidly admitted in the prior proceeding that he had tried to grow marijuana in the six by six garden, that he would have given it to his friends, and that he had in fact given Caldwell a valium tablet. The reliability of the evidence presented here is undisputed. The issue is its

weight and significance. These were not inappropriate factors for the trial judge to consider.

 Although we concur with the trial judge's conclusion, we disapprove of his reference to community anxiety in denying this individual the statutory right to conditional discharge. Whether this "public anxiety" arose from a general apprehension about drug abuse in Salem County or from the focused outrage over this school teacher's misconduct, such factors should not have influenced the trial judge's deliberations.

Judicial recognition of or action upon public opinion against a particular defendant cannot be tolerated in our criminal justice system. That the citizens of Pennsville became infuriated to the extent of threatening to take their children out of school is, and should be, of no concern to the trial judge. "The constitutional safeguards relating to the integrity of the criminal process attend every stage of a criminal proceeding. . . . There can be no doubt that they . . . exclude influence or domination by either a friendly or hostile mob." *Cox v. Louisiana,* 379 *U.S.* 559, 562, 85 *S.Ct.* 476, 479, 13 *L.Ed.*2d 487, 491 (1965).

Our specific direction to the trial judge that he consider *State v. Sutton, supra,* on the remand may have misled him. In that case we suggested that public anxiety over certain crimes might be of limited relevance to a prosecutorial decision on suspension of proceedings in PTI. But there is a difference between public anxiety over safety and public outrage. As to the latter, ". . . [j]udges are supposed to be men of fortitude able to thrive in a hardy climate." *Craig v. Harney,* 331 *U.S.* 367, 376, 67 *S.Ct.* 1249, 1255, 91 *L.Ed.* 1546, 1552 (1947).

 Although the usual practice would be to remand for further consideration, we decline to do so in view of the five year length of this litigation and our belief that the trial judge would adhere to his decision because it was fundamentally founded upon an evaluation of the whole person of the defendant, not on the community's viewpoint.

Pervading this entire record is the abiding recognition by the trial judge that this defendant was not amenable to rehabilitation or correction in the sense this program contemplates. *State v. Maddocks, supra,* 80 *N.J.* at 107. The defendant had an announced and unrenounced commitment to personal use of marijuana. The court specifically said it had "no quarrels with his wanting reform in the drug laws" but was "concerned about how he manifested his beliefs." This manifestation took the admitted form of growing marijuana for his own use and stating he would provide it to his friends for their use. The judge's desire to be fair may be found in his extended colloquy with counsel on the second conditional discharge hearing when he said to counsel: I'm dying to find a reason to grant it [conditional discharge] . . . and I'm asking you to help me find an answer." But he could not escape the fact that the defendant failed, in the words of the judge, to "demonstrate an amenability toward rehabilitation" and the court's concern was not rehabilitation of thoughts but of behavior. *State v. Sutton, supra,* 80 *N.J.* at 119.

## IV.

In sum then, the defendant was denied a conditional discharge because the trial court determined he was not amenable to rehabilitation in the statutory sense; not because he expressed unpopular views but because while teaching in the community he openly grew marijuana; not because of unproven allegations not part of the record but because of his own statements that he had given the former pupil, Caldwell, the valium tablet and would have sold or shared the marijuana he was growing if it had not been stolen. We sit not to substitute our judgment for a trial court's or pass upon the social use of marijuana. Given the uncontroverted factors, appropriately considered, whatever our own views, we cannot say on this record that the decision of a conscientious trial judge should be overturned.

Accordingly, we reverse the judgment of the Appellate Division.

PASHMAN, J., dissenting.

Defendant Humphreys, who pleaded guilty to possession of 27.34 grams of marijuana, was denied admission to our conditional discharge program, *N.J.S.A.* 24:21–27. In denying defendant's application, the trial court relied on three factors: (1) "extreme public anxiety" over defendant's misconduct; (2) defendant's occupation as a high school teacher; and (3) some evidence that Humphreys may have distributed small amounts of marijuana and one valium tablet, which evidence was adduced at a separate trial in which he was acquitted of possession of marijuana with intent to distribute.

The trial court's reliance on public pressure as a ground for not admitting Humphreys to the program was a clear denial of due process. The majority concedes this. (*Ante* at 15.) Yet somehow the majority believes it can purge the trial court decision of its unconstitutional aspect by deferring to its permissible reasons for denial. I disagree that the elements underlying the trial court decision can be dissected so neatly. The weakness of the other grounds for denial and the strong record for admission presented by defendant demonstrate that the trial court's capitulation to public pressure was central to its decision. Moreover, each of the other grounds relied on by the trial judge is of questionable validity at best. The net result is a clear abuse of discretion by the trial court.

Humphreys is obviously eligible for conditional discharge. He is charged with an offense under *N.J.S.A.* 24:21–20, has no prior drug convictions and, although charged with distribution as well as possession, was acquitted by a jury of the distribution charge. Under *N.J.S.A.* 24:21–27(c), conditional discharge is to be denied unless the trial court finds that defendant's presence in the community or in a civil treatment center or program will not pose a danger to the community. However, neither the trial court nor the majority relies on this provision to disqualify defendant. It would be absurd to disqualify him on the basis of the danger he poses to the community since the first Appellate

Division decision precluded incarceration as a sanction. Moreover, it is now more than five years since defendant's arrest. His completely clean record in the interim shows beyond a doubt that he poses no danger to the community.

In denying conditional discharge to defendant, the trial court relied on the "whole person" concept. Even if defendant is fully eligible for the program under the statutory criteria, "the [trial] court also has broad discretion, considering all relevant factors and applying the whole person concept, to determine whether such person is otherwise a fit subject for the statutory program." *State v. Sayko*, 71 *N.J.* 8, 13 (1976) (footnote omitted).

As the majority, notes, the general rule is deference to trial court decisions on conditional discharge. Nonetheless, this Court has on several occasions approved reversals of trial court decisions under this program and prosecutorial decisions under the analogous pre-trial intervention program. *See State v. Bender*, 80 *N.J.* 84 (1979); *State v. Maddocks*, 80 *N.J.* 98 (1979); *State v. Sutton*, 80 *N.J.* 110 (1979); *State v. Sayko, supra.*

> Ordinarily, an abuse of discretion will be manifest if defendant can show that a prosecutorial veto (a) was not premised upon a consideration of all relevant factors, (b) was based upon a consideration of irrelevant or inappropriate factors, or (c) amounted to a clear error in judgment. [*State v. Bender*, 80 *N.J.* at 93]

The majority concedes that the trial court's decision was in part premised on the inappropriate factor of hostile public opinion. Yet the majority ignores the trial court's serious transgression by deferring to its disposition.

Premising a sentencing decision on public outcry against a particular defendant is no mere technical error. It is nothing less than the surrender of our criminal justice system to public pressure. As the majority explains,

> Judicial recognition of or action upon public opinion against a particular defendant cannot be tolerated in our criminal justice system. That the citizens of Pennsville became infuriated to the extent of threatening to take their children out of school is, and should be, of no concern to the trial judge. 'The constitutional safeguards relating to the integrity of the criminal process attend every stage of a criminal proceeding.... There can be no doubt that they ... exclude influence or domination by either a friendly or hostile mob.' *Cox v. Louisiana,* 379 *U.S.* 559, 563, 85 *S.Ct.* 476, 480, 13 *L.Ed.*2d 487, 491, (1965). [*Ante* at 15]

The trial court decision must thus be deemed a patent abuse of discretion. It was an abdication of the rule of law. "[M]ob law is the very antithesis of due process." *Cox v. Louisiana*, 379 *U.S.* 559, 562, 85 *S.Ct.* 476, 479, 13 *L.Ed.2d* 487 (1965).

The majority recognizes that the usual practice in the face of such a serious trial court error would be a remand, *ante* at 15, *see State v. Bender, supra,* but chooses instead to affirm the denial. The majority bases this disposition on its view that public opinion formed only a small part of the trial court's rationale, and that therefore the decision would have been the same even absent that factor. (*Ante* at 15.) However, any attempt to ascertain what factors led the trial judge to his decision must be pure speculation. The majority focuses on the evidence of distribution as the primary reason for denial. However, the trial court's first denial, which this Court summarily reversed, 81 *N.J.* 269 (1979), *makes absolutely no mention* of distribution as a reason for denial. We are thus left with no choice but to conclude that defendant's occupation, and the public outcry against him because of his occupation, were essential to the trial court's decision.

In support of its affirmance of the trial court, the majority strongly emphasizes the deference generally accorded trial judges in these decisions. This is a mistake. It is simply wrong to defer to a decision based on unconstitutional grounds since we have no way of knowing what the result would have been had the judge based his decision entirely on proper factors. In reality, the majority is independently weighing the evidence and reaching its own determination that Humphreys should be denied conditional discharge. I have no objection to this procedure. In view of the length of this litigation, I agree that independent factfinding is preferable to another remand. However, in this weighing of the evidence, we cannot give to the trial court the deference which would be appropriate had it made a proper decision.

More importantly, I strongly disagree with the result the majority reaches. The grounds relied upon are highly questionable, and even if valid, amount to very little when compared with the favorable record defendant presents.

The factor on which the trial court claims to rely most heavily is evidence that Humphreys may have distributed drugs. The evidence suggests that he distributed one valium tablet and that he had tried to grow marijuana that, if he had succeeded, he might have shared with his friends. However, none of this evidence was properly before the trial court. Rather, it was based on evidence the trial judge heard in Humphreys' separate trial for distribution, in which he was *acquitted* of that charge.

Our rules and cases clearly establish that all information on which the trial judge relies must be either part of the record of the case or contained in the pre-sentence report. *R.* 3:21–2; *State v. Kunz*, 55 *N.J.* 128 (1969). This rule derives from a defendant's constitutional right to see and comment upon all factors on which a sentencing decision is to be based. In addition, the rule is necessary so that the reviewing court can evaluate all the evidence on which the sentencing decision was made. Defendants seeking admission to conditional discharge should similarly be able to confront all adverse evidence that may affect the decision.

The trial court's reliance on evidence adduced at a different trial is a clear violation of this principle. Neither the alleged giving of a valium tablet nor defendant's alleged intention to give part of his small marijuana crop to some close friends was relevant to the charge that his possession of 27.34 grams was with intent to distribute. Therefore, there was no incentive for defendant to seek to refute that evidence. Moreover, we do not have the record of the first trial before us, so we cannot know the extent to which these allegations were established. All we can know with certainty is that a jury found Humphreys not guilty of distribution.

Further, even if this evidence were properly before the trial court, and even if it conclusively proved that defendant gave small amounts of marijuana or an occasional valium tablet to close friends, that would hardly be a strong reason to deny conditional discharge. There is no allegation that he was engaged in the business of selling drugs. The quantities involved are very small.[1] Activity of this nature is a flimsy ground on which to deny conditional discharge.

The second reason offered is that Humphreys is a teacher. This, of course, is the reason for the public outcry against him. Nonetheless, it is agreed that such public pressure is an unconstitutional basis for denial. Nor does the majority contend that Humphreys violated a public trust. The public trust doctrine concerns only persons whose crimes have threatened the public at large, or have been directly related to the trust reposed in such person. Thus, we have approved of conditional discharge or pre-trial intervention for a policeman charged with possession of heroin, *State v. Alston*, 71 *N.J.* 1 (1976), a pharmacist charged with diverting cocaine to personal use, *State v. Bender, supra,* and school teachers charged with possession and receipt of stolen property, *State v. Hermann*, 80 *N.J.* 122 (1979). Here as well, defendant's wrongdoing has no relation to his occupation as a teacher.[2]

Yet the majority still suggests that defendant's occupation can be considered, though it does not suggest why. Whether or not a person should continue to teach when he has violated the law is not a proper concern of this Court. That is for the school district to determine.[3] More likely, the majority is worried that

---

[1] The marijuana "crop" which defendant allegedly attempted to grow was merely a six feet by six feet patch of ground—hardly enough to constitute a business of selling drugs.

[2] There is no evidence whatsoever that defendant provided marijuana to his students or used any drugs in their presence.

[3] As a matter of fact, defendant is no longer teaching in New Jersey.

granting conditional discharge would set a bad example for the children in defendant's school district. This was the reason for the trial court's first denial, which we reversed, 81 *N.J.* 269 (1979).

I think the view that a teacher must be punished to give school children the proper lesson about drug use is misguided. The premise underlying conditional discharge is that drug abuse is an illness as much as a crime. Where a defendant can be diverted into a program that may cure him, at no risk to the community, we have an opportunity to temper justice with mercy and pragmatism, limiting punitive incarceration to cases in which it is needed. This is part of the way our criminal justice system works. Is that so terrible a lesson for children to learn? The desire to hide the workings of conditional discharge from high school students is an improper and inadequate reason to deny Humphreys admission to the program. *See State v. Hermann, supra.*

The final reason offered is that Humphreys believes there is nothing wrong with marijuana use, advocates reform of the marijuana laws, and therefore is not amenable to rehabilitation. I assume it is beyond dispute that the Constitution manifestly prohibits basing criminal sanctions on a person's political beliefs, or on his expression of those beliefs. Out of fairness to my colleagues, I will therefore assume that their concern is that Humphreys' political beliefs will necessarily entail continued violation of our drug laws. That position reflects two basic assumptions that I decline to adopt.

The first assumption underlying the majority's position is that persons supporting legalization of marijuana use it despite its illegality. There is absolutely no basis in fact for such an assumption. Advocacy of legalization represents a view that the criminal justice system is not the best means of dealing with marijuana users. It does not represent any view as to the advisability of using marijuana.

Moreover, the majority's position assumes that drug laws have no deterrent effect. One of the premises of conditional discharge and pre-trial intervention is that certain first offenders will be sufficiently scared by their first arrest, and by the possibility of going to prison, that actual incarceration may not be needed. Humphreys is intelligent enough to know that a second offense would be dealt with more harshly. There is thus no reason to believe he will continue to use marijuana, merely because he supports its legalization. This view is strengthened greatly by the fact that his record since this arrest has been perfectly clean.

Secondly, the majority is assuming in advance that supervisory treatment of Humphreys' drug use will have no effect. Again, the only basis for that assumption is defendant's advocacy of reform of the marijuana laws, and again the assumption is unfounded. Part of the purpose of drug rehabilitation programs is to change the user's attitudes about drug use by teaching the user about the problems associated with it.

I thus conclude that defendant's belief in reform of the marijuana laws provides no basis for denying conditional discharge. The majority's arguments along these lines amount to the imposition of criminal sanctions on a person because of his political beliefs, which is a dangerous proposition.[4]

In sum, the majority, under the guise of deference to a trial court decision that merits no deference, has performed its own analysis of the record and has denied conditional discharge for several highly questionable reasons. It relies on unproven allegations of drug distribution not properly part of the record, defendant's occupation as a teacher and his advocacy of reform of the marijuana laws. These reasons are each of questionable

---

[4]How different is this from the view that opponents of our political system are less committed to our law and the stability of our social fabric, and therefore more likely to commit crimes of various sorts? Such a line of reasoning is of course unconstitutional as a basis for criminal justice decisions.

validity, and even if proper they do not add up to much. At worst, they suggest someone who has personally used small amounts of marijuana, may have shared some with friends, and advocates reform of marijuana laws.

These are weak grounds indeed for denying discharge to a man with a strong professional record, a decorated veteran with no prior arrests of any sort, who has been able to conform his conduct to the law during the more than five years since his arrest. I would therefore affirm.

Justice POLLOCK joins in this dissent.

*For reversal*—Chief Justice WILENTZ and Justices CLIFFORD, SCHREIBER, HANDLER and O'HERN—5.

*For affirmance*—Justices PASHMAN and POLLOCK—2.