# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1544-23

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

A.D.,[1]

    Defendant-Respondent.

_____

> Argued August 13, 2024 – Decided August 23, 2024
>
> Before Judges Mayer, Firko, and Bishop-Thompson.
>
> On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Burlington County, Accusation No. 13-12-1341.
>
> Jennifer B. Paszkiewicz, Assistant Prosecutor, argued the cause for appellant (Lachia L. Bradshaw, Burlington County Prosecutor, attorney; Jennifer B. Paszkiewicz, of counsel and on the brief).

---

[1] We use initials to protect the confidentiality of the victim and respondent. See R. 1:38-3(c)(12).

James H. Maynard argued the cause for respondent (Maynard Law Office, LLC, attorneys; James H. Maynard, on the brief).

PER CURIAM

On leave, the State appeals from a December 13, 2023 Law Division order granting defendant A.D.'s petition for post-conviction relief (PCR) following a five-day evidentiary hearing. We affirm for the comprehensive and cogent reasons expressed by Judge Terrence R. Cook in his December 13, 2023 oral decision.

I.

Factual Background

The record informs our decision. On May 5, 2013, defendant, who was seventeen years old at the time—and five months shy of his eighteenth birthday—was charged in a juvenile delinquency complaint with an offense that if committed by an adult would constitute second-degree sexual assault, N.J.S.A. 2C:14-2(b).[2] The juvenile delinquency complaint alleged that defendant exposed his penis to E.F., a seven-year-old girl, while he was sitting on bleachers at a park holding his penis. Defendant asked E.F. if she wanted to "touch his penis while he manually stimulated himself." The complaint alleged

___
[2] Docket number FJ-03-1284-13.

defendant "commit[ed] an act of sexual contact with E.F. for the purpose of sexually arousing or sexually gratifying or to humiliate or degrade E.F. when E.F. was less than [thirteen] years old, defendant being at least [four] years older than E.F."

Plea negotiations ensued and resulted in a plea offer being memorialized in an August 27, 2013 letter from defendant's former counsel to the assistant prosecutor:

> Per our previous discussions, you require a copy of the signed psychosexual report by Dr. [Chester] Sigafoos as a condition of the plea offer you have made of five years[1] probation with treatment at Bonnie Brae in exchange for a plea of [g]uilty to [e]ndangering the [w]elfare of a [c]hild (third[-]degree),[3] voluntary waiver to adult court[4] and the applicability of Megan's Law.[5]

The next day, August 28, 2013, the assistant prosecutor sent a letter to former defense counsel stating in pertinent part:

> As you are aware, the State extended a plea offer on the above[-]referenced matter on July 11, 2013. In accordance with the plea offer the original charge of [s]econd[-][d]egree [s]exual [a]ssault will be amended

---

[3] N.J.S.A. 2C:24-4(a).

[4] We use the terms "adult court" and "Criminal Part" interchangeably in our opinion.

[5] N.J.S.A. 2C:7-1 to -23.

to [t]hird[-][d]egree [e]ndangering the [w]elfare of a [c]hild. As a result, [defendant] will voluntarily waive jurisdiction of the Superior Court, Chancery Division-Family Part to the Superior Court, Law Division-Criminal Part. As part of his sentence[,] he will receive five years of adult probation, Megan's Law for life, and be required to successfully attend and complete the Bonnie Bra[e] residential program.

However, the State made it clear on July 11, 2013, that this plea is contingent upon defense [counsel] forwarding to the State a copy of Dr. Sigafoos'[s] psychosexual evaluation of [defendant.]

Neither the State's nor defendant's letters mentioned Parole Supervision for Life (PSL), N.J.S.A. 2C:43-6.4, would be imposed by defendant's waiver to the Criminal Part.

At the September 5, 2013 waiver hearing, Family Part Judge John L. Call, Jr. asked defendant under oath if he understood the waiver agreement and plea offer, which was stated on the record by the assistant prosecutor as follows: defendant would plead guilty to third-degree endangering the welfare of a child, and the State would recommend a five-year sentence of non-custodial probation, subject to Megan's Law conditions for life, and successful completion of the Bonnie Brae residential program. The judge advised defendant that he was entitled to a waiver hearing. In addition, the judge explained the consequences of Megan's Law to defendant—including tiering, community notification

4

requirements, registration, internet posting, travel restrictions, and "community supervision for life" (CSL) that may limit his occupation and residence—if he was sentenced as an adult.

The judge granted a brief recess to give defendant an opportunity to speak to his counsel and parents, who were present in court, about waiver to adult court and the proposed plea offer. Following the recess, defendant questioned Judge Call as to whether the imposition of Megan's Law was "for life." The judge responded, "Megan's Law goes for life . . . . [A]fter fifteen years . . . as an adult, after fifteen years you can make [an] application to be removed from Megan's Law." There was no mention of PSL at the waiver hearing.

Defendant indicated that he wanted to waive his right to a waiver hearing and dispose of the case. Defendant testified no one forced, coerced, or threatened him to consent to waiver to the Criminal Part and that he was satisfied with his counsel's representation. Defendant stated that he did not have any questions for the judge or counsel.

The judge stated that "absent some type of misconduct by young [defendant] between now and the time that the adult matter is resolved . . . [t]he State is bound by the plea agreement" as part of defendant's voluntary waiver to the Criminal Part. The judge confirmed defendant's parents were present in

A-1544-23

court and concluded his waiver was voluntary, he understood the nature of the hearing, and ordered the matter be transferred to the Criminal Part. The record shows defendant was not presented with any plea forms or supplemental plea forms at the waiver hearing.

On December 16, 2013, defendant pled guilty before Judge Cook in the Criminal Part to one count of third-degree endangering the welfare of a child. The State agreed to recommend a sentence of five years at the Bonnie Brae residential program. In addition, the State represented Megan's Law applied to defendant's case and that he completed the supplemental plea forms, which contained "Additional Questions for Certain Sexual Offenses." Defendant agreed to waive his right to appeal and have no contact with the victim or her family members. The State made no reference to PSL when it placed the terms of the waiver and plea agreement on the record.

Judge Cook queried defendant regarding his guilty plea and confirmed he was eighteen years old at the time of the plea hearing. Defendant stated he was not under the influence of any substances that would render him unable to understand the nature of the proceedings. Defendant acknowledged he was entering his guilty plea voluntarily and had not been forced, coerced, or threatened to do so. Defendant stated he reviewed the plea agreement with

counsel, that he signed the plea forms, and had no questions for the judge or counsel.

On August 15, 2014, Judge Cook considered the applicable aggravating and mitigating factors and sentenced defendant to five years of probation, completion of the Bonnie Brae residential treatment program, Megan's Law, PSL, internet posting requirements, and imposed the requisite fines and fees. Thereafter, on September 16, 2014, defendant signed a three-page document entitled, "State of New Jersey Conditions of Supervision [PSL]."

On April 28, 2015, defendant was charged with endangering the welfare of a child for possessing images of child pornography.[6] Pursuant to a negotiated plea agreement, defendant pled guilty to one count of third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(b)(5)(b). On May 13, 2016, Judge Cook sentenced defendant to an agreed upon sentence of five years of non-custodial probation conditioned upon completion of intensive sex-specific outpatient treatment and attending school or maintaining employment after completion of the sex-specific outpatient treatment program. Defendant agreed to waive his right to appeal.

---

[6] Burlington County accusation number 15-11-1324.

On September 30, 2016, defendant was re-sentenced by Judge Cook after the New Jersey State Parole Board determined that defendant was illegally sentenced. The Parole Board advised the judge that pursuant to N.J.S.A. 2C:43-2(g), defendant could not be sentenced to probation and PSL at the same time because he was convicted of third-degree endangering the welfare of a child. The judge therefore vacated the five years of probation as to both accusations and entered an amended judgment of conviction, which included Megan's Law and PSL.

On December 11, 2018, defendant was charged under accusation number 19-08-1022 with third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(b)(5)(b)(iii); fourth-degree possession of a prohibited device, N.J.S.A. 2C:39-3(e); and fourth-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(a). The State had discovered that defendant possessed 2,673 images of child pornography, which constituted a second-degree crime under N.J.S.A. 2C:24-4(b)(5)(ii).

On August 12, 2019—five days after filing his PCR petition—defendant negotiated a pre-indictment plea to these charges. Defendant agreed to plead guilty to one count of third-degree endangering the welfare of a child in exchange for the State recommending a sentence of eight years' imprisonment

in State prison, to run concurrent to the parole violation[7] he was serving. Defendant stipulated he was subject to extended term sentencing pursuant to N.J.S.A. 2C:24-4(b), but could argue for a lower sentence at the sentencing hearing. In addition, defendant agreed to be subject to Megan's Law, forfeit electronic devices, and waive his right to appeal.

On December 13, 2019, Judge Cook sentenced defendant to six years' imprisonment, to be served at the Adult Diagnostic and Treatment Center at Avenel, continued PSL, forfeiture of electronic devices, and imposed the applicable fines and assessments. The State dismissed the remaining charges.[8]

<u>The PCR Petition</u>

On August 6, 2019, defendant filed a PCR petition. In his petition, defendant alleged the plea offer placed on the record by the State on September 5, 2013, "did not include any mention of [PSL], pursuant to N.J.S.A. 2C:43-6.4(a), which requires imposition of PSL for any conviction for 'endangering the

---

[7] The parole violation is not stated in the record.

[8] On January 6, 2020, the judge amended the judgment of conviction to indicate defendant's sentence was concurrent to the current parole violation sentence he was serving. On January 13, 2020, the judge again amended the judgment of conviction to reflect the jail credits defendant was receiving. Defendant did not file a direct appeal from any of the stated convictions or sentences.

A-1544-23

welfare of a child by engaging in sexual conduct which would impair or debauch the morals of a child pursuant to subsection (a) of N.J.S.[A.] 2C:24-4.'" Defendant argued he received ineffective assistance of counsel because his former counsel never advised defendant or his parents that if he accepted the plea offer, he would be subject to PSL.

Defendant contended he was a special education student with severe learning and psychiatric disabilities, and could not have made a knowing, intelligent, and voluntary waiver to adult court. Defendant also claimed he did not understand by pleading guilty that he would be subject to PSL, and therefore, received ineffective assistance of counsel.

On April 27, 2020, Judge Cook ordered an evidentiary hearing, stating oral testimony would be helpful to the court in determining whether defendant voluntarily waived into adult court and whether his counsel "failed to utilize available defenses to assist" defendant. The judge also wanted to consider testimony regarding defendant's claim that he was confused about PSL, notwithstanding the fact that he signed the plea forms indicating he may have been advised of PSL, and whether defendant "understood the limitations and consequences of [his] waiver and subsequent plea agreement."

The Evidentiary Hearing

Dr. Jeffrey Allen and Dr. Daniel Bromberg testified for defendant at the hearing. Defendant testified on his own behalf. Dr. Catherine Barber and Assistant Prosecutor Robert VanGilst testified for the State.

Dr. Allen was qualified as an expert in the field of psychology. He evaluated defendant, administered the Wechsler Abbreviated Scale of Intelligence test to him, and conducted collateral interviews, including with defendant's mother. Dr. Allen opined defendant is "intelligent enough to understand court proceedings" but suffers from "a deficit in working memory," bipolar disorder, Attention Deficit Hyperactivity Disorder, and auditory processing difficulties. Dr. Allen explained that as a result of these conditions, defendant suffers from "impulsivity, difficulty concentrating, and difficulty following complex information."

Dr. Allen observed defendant "was looking for a quick way out, thought he found one, and thus he jumped at" the plea offer. In addition, Dr. Allen testified defendant's deficits "made it impossible for him to knowingly, intelligently[,] and voluntarily consent" to the plea offer and waiver to adult court. On cross-examination, Dr. Allen confirmed defendant requires "extra time to understand and process things that are occurring." Dr. Allen testified

11

"there's no evidence that [defendant] had the kind of accommodations that would be necessary to help him understand all of this. It was overwhelming." On re-direct, Dr. Allen clarified defendant's "working memory problem made it impossible for him to absorb it all."

Dr. Bromberg was qualified as an expert witness in the fields of forensic psychology, childhood and adolescent disorders, treatment of juveniles with development, cognitive, and psychiatric disabilities, and sexual behavioral problems. Based on defendant's disabilities, Dr. Bromberg opined it was "highly improbable" that he had enough time to process the information and understand the implications of the plea offer made at the waiver hearing. In his expert opinion, Dr. Bromberg testified defendant's consent to the offer at the waiver hearing was not knowing, intelligent, and voluntary because he was subjected to "information overload."

In addition, Dr. Bromberg stated the judge's "lengthy explanations" to defendant created a "barrier to understanding" rather than an "accommodation." Dr. Bromberg opined the "two-minute, nine-second break" that occurred during the court proceeding "was not an adequate accommodation" for defendant to articulate what he did not know. Dr. Bromberg testified defendant "has specific

deficits and specific needs that needed to be addressed" in order to "meaningfully participate in and understand the legal proceedings against him."

On cross-examination, Dr. Bromberg explained that if defendant had been given the information "over the course of time," "broken down," and had to "repeat the information back," then the process would be more meaningful instead of simply asking defendant for "yes" and "no" responses.

Defendant testified his former counsel never explained what "waiver" to adult court meant but advised defendant that if he did not waive to the Criminal Part, he would be sentenced to "ten years in prison." Instead, defendant stated that his former counsel told him if he waived up to adult court, he would be sentenced to "probation." Defendant testified former counsel never mentioned "PSL" to him. Defendant also claimed he told former counsel that he "didn't want to be on anything for life."

Regarding the waiver hearing, defendant testified at the evidentiary hearing he had to "fight" to "stay awake," and did not "remember hearing anything that was being said in the courtroom." Defendant stated he could not have consented to waive up to adult court if it involved Megan's Law or PSL. On cross-examination, defendant testified he did not remember signing the plea forms but admitted that his signature and initials were on the forms. Defendant

13

confirmed he was not made aware of PSL. On redirect, defendant testified he understood his plea deal for voluntarily waiving to adult court was "[f]ive years' probation, successful completion of Bonnie Brae and Megan's Law."

Dr. Barber was qualified as an expert in the field of forensic psychology. Dr. Barber testified she found it "inconsistent and puzzling" that Dr. Allen did not "pin down" what defendant's memory impairments were at the time of the waiver and plea hearings. In addition, Dr. Barber criticized Dr. Allen for not probing whether defendant "might have been misrepresenting or malingering in his presentation of his memory," which is "unsupported by the data" Dr. Allen gathered. Dr. Barber opined that defendant was "competent" to "make a voluntary, knowing, and intelligent consent" at the waiver and plea hearings, and had "plenty of time" to consult with his parents and defense counsel between the two court proceedings.

On cross-examination, Dr. Barber admitted the courtroom "could be a stressful environment." She agreed with Dr. Sigafoos's assessment that defendant's working memory is "extremely low" and consistent with Dr. Allen's findings.

Assistant Prosecutor VanGilst testified he has been employed by the Burlington County Prosecutor's Office for almost thirty-four years and is head

14

of the Major Crimes Unit. VanGilst testified that in 2013, he was supervisor of the Family Unit and reviewed decisions seeking to waive juvenile matters to the Criminal Part. He testified it was the State's intention in this case to seek imposition of PSL in the Criminal Part.

VanGilst testified he was aware defendant had "poor attention span," "learning disabilities," and "maturational stunting." VanGilst explained defendant had uncontrollable impulses, which he acted upon, and "was unable to control" himself based on Dr. Sigafoos's report. VanGilst testified there was a "need . . . to maintain supervision of [defendant] for a lifetime." When asked about the "specifics" of the plea offer to defendant, VanGilst responded: "Five years of adult probation, Megan's Law for life[,] and be required to successfully attend and complete the Bonnie Brae in-patient program."

VanGilst agreed there was no mention of PSL in the State's offer to defendant. When asked if he thought PSL was a "component of Megan's Law," VanGilst answered that if defendant waived to adult court, PSL "would be covered in the Megan's Law for life" and "would make probation moot." VanGilst testified about the "danger" defendant posed because he was "unable to control [his] impulses, he was [seventeen] years old, . . . and was extremely large" for his age.

On cross-examination, VanGilst was asked whether PSL was ever "independently mentioned" in the State's plea offers to defendant. VanGilst testified the offer was extended by another assistant prosecutor, and he was not sure if PSL was included. VanGilst admitted that PSL "was not explicitly stated to . . . defendant" and was not articulated to defendant or the judge at the waiver hearing. Defendant moved thirty-two exhibits into evidence, and the State moved ten exhibits into evidence.

On December 13, 2023, following oral summations, Judge Cook gave his decision on the record setting forth his reasons for granting PCR.[9] The judge found all the witnesses to be "credible" but did not place significant weight on "Kristina Kersey's testimony" "given her . . . bias toward the juvenile justice system."[10] The judge found "[t]he evidence of record indicates the plea agreement was for a five-year probationary term, Megan's Law for life, successful completion of the Bonnie Brae residential program, and no contact with the victim and the victim's immediate family members."

---

[9] The judge denied defendant's motion to amend the PCR petition prior to rendering his decision that day.

[10] The judge apparently misspoke because Kersey did not testify at the hearing. Kersey's report is mentioned in the record but not contained in the appendices.

The judge noted the imposition of PSL "was not discussed at all during the September 5th, 2013 hearing, let alone as a condition of waiver to adult court." The judge specifically highlighted that Judge Call mentioned "[CSL]" (emphasis added) as part of his "soliloquy" to defendant, which may "limit the type of occupation [he] might be permitted to engage in."

Judge Cook emphasized that the record shows defendant "was confused about the length of Megan's Law," because as he stated on the record, he didn't understand the meaning of the phrase "for life." Although defendant was given "a two-minute and nine-second break" to speak to his former counsel about the plea offer, Judge Cook determined the "record is unclear" as to whether the "off the record" conversation clarified for defendant whether he would be on "[CSL]" or understood the "life requirement of Megan's Law."

The judge concluded that PSL "is a material consequence" and "was not discussed" at the waiver hearing. At bottom, the judge found that defendant waived to adult court "under very specific conditions"—Megan's Law for life, successful completion of the Bonnie Brae residential program, and no contact with the victim—but not PSL. The judge emphasized that when he imposed PSL at sentencing, it had not been discussed at the waiver hearing.

A-1544-23

The judge found defendant "could not have made a knowing, intelligent, and voluntary waiver" not necessarily because of his disabilities but because he never received an "adequate, thorough, and . . . understandable" explanation of what PSL meant for him. The judge highlighted PSL is "something that is different or more severe than the agreement" and it is "axiomatic" that a court "cannot negotiate a term or impose a term that was not negotiated . . . or different than the plea agreement, and here, it appears that's what the [c]ourt did." In addition, the judge stressed that VanGilst's "recollection or statement regarding Megan's [Law] and PSL . . . may have been a misunderstanding."

Therefore, the judge granted the PCR relief, vacated the waiver to the Criminal Part, the subsequent plea, and sentence for accusation number 13-12-1341, and ordered juvenile complaint FJ-03-1284-13 be returned to the active Family Part list. A memorializing PCR order was entered. The State moved to stay the PCR order pending appeal, which was denied. We granted the State's motion for leave to appeal and stayed the PCR order.

The State raises the following argument with subpoints on appeal:

> [THE PCR COURT] ERRONEOUSLY GRANTED DEFENDANT'S MOTION FOR PCR.

Subpoint A

The Trial Court Erred In Relying Upon Defendant's
Representations And In Finding Defendant's
Evidentiary Hearing Testimony Credible.

Subpoint B

Defendant Did Not Suffer The Ineffective Assistance
Of Counsel, Nor Was His Guilty Plea Unknowing Or
Involuntary.

## II.

Where the PCR judge conducts an evidentiary hearing, as in this case, we apply a deferential standard of review, accepting "the PCR court's factual findings, given its opportunity to hear live witness testimony" and "'uphold[ing] the PCR court's findings that are supported by sufficient credible evidence in the record.'" State v. Gideon, 244 N.J. 538, 551 (2021) (quoting State v. Nash, 212 N.J. 518, 540 (2013)). However, we review a PCR judge's legal conclusions de novo. Nash, 212 N.J. at 540-41.

"A petitioner is generally barred from presenting a claim on PCR that could have been raised at trial or on direct appeal, [Rule] 3:22-4(a), or that has been previously litigated, [Rule] 3:22-5." Nash, 212 N.J. at 546. PCR "is not a substitute for direct appeal; nor is it an opportunity to relitigate a case on the merits." State v. Szemple, 247 N.J. 82, 97 (2021).

To establish a prima facie claim of ineffective assistance of counsel, a party "must demonstrate the reasonable likelihood of succeeding under the test set forth in Strickland v. Washington,[11] . . . which [the Court] adopted in State v. Fritz."[12] State v. Preciose, 129 N.J. 451, 463 (1992).

To satisfy the two-prong Strickland/Fritz test, a defendant must first "'show that counsel's performance was deficient.'" Gideon, 244 N.J. at 550 (quoting Strickland, 466 U.S. at 687). "Second, the defendant must have been prejudiced by counsel's deficient performance." Ibid. (citing Strickland, 466 U.S. at 687). "The defendant's conviction must be reversed if both prongs of the Strickland standard have been satisfied because, in such cases, 'the ineffective representation constitutes "a breakdown in the adversary process that renders the result unreliable."'" Ibid. (quoting Nash, 212 N.J. at 542).

A defendant's right to effective assistance of counsel "extends to the plea-bargaining process." Lafler v. Cooper, 566 U.S. 156, 162 (2012). "A guilty plea may be accepted as part of a plea bargain when the court is assured that the defendant enters into the plea knowingly, intelligently and voluntarily." State v. Johnson, 182 N.J. 232, 236 (2005) (citing R. 3:9-2). "For a plea to be

---

[11]  466 U.S. 668 (1984).

[12]  105 N.J. 42, 58 (1987).

knowing, intelligent and voluntary, the defendant must understand the nature of the charge and the consequences of the plea." Ibid. "Although a court is not responsible for informing a defendant of all consequences flowing from a guilty plea, at a minimum the court must ensure that the defendant is made fully aware of those consequences that are 'direct' or 'penal.'" Ibid. (quoting State v. Howard, 110 N.J. 113, 122 (1988)). "Obviously, this is best accomplished by the court satisfying itself, through specific question[s] and answer[s]," during the plea colloquy. State v. Kovack, 91 N.J. 476, 484 (1982).

"The requirement that the court be satisfied in that respect serves several salutary ends. It avoids having a defendant enter into a plea hampered by being 'misinformed . . . as to a material element of a plea negotiation, which [he or she] has relied [on] in entering his [or her] plea.'" Johnson, 182 N.J. at 236-37 (quoting State v. Nichols, 71 N.J. 358, 361 (1976)). Any such misunderstanding or "mistaken belief" on the part of a defendant must be "a material factor in the decision to plead guilty." State v. Kiett, 121 N.J. 483, 490 (1990). Thus, "[c]larity as to the direct and penal consequences of a defendant's guilty plea promotes the binding resolution of charges because it serves to ensure that a defendant's 'expectations [are] reasonably grounded in the terms of the plea

21

bargain.'" Johnson, 182 N.J. at 237 (quoting State v. Marzolf, 79 N.J. 167, 183 (1979)).

Furthermore, "[i]t is fundamental that when a defendant pleads guilty pursuant to a plea agreement, the terms of the agreement must be fulfilled." Kovack, 91 N.J. at 482. Indeed, "[t]he terms of the plea agreement[] must be meticulously adhered to, and a defendant's reasonable expectations generated by plea negotiations should be accorded deference." Ibid. (quoting State v. Brockington, 140 N.J. Super. 422, 427 (App. Div. 1976)). When this does not occur, one of the appropriate remedies is for defendant to be given the option to "withdraw his [or her] guilty plea subject to reinstatement of the dismissed counts and proceed to trial." Id. at 485.

We review a waiver decision to determine "whether the correct legal standard has been applied, whether inappropriate factors have been considered, and whether the [court's] exercise of discretion constituted a 'clear error of judgment' in all of the circumstances." State v. R.G.D., 108 N.J. 1, 15 (1987) (quoting State v. Humphreys, 89 N.J. 4, 13 (1982)). The court's factual findings must also be reviewed to ensure they are "grounded in competent, reasonably credible evidence." Ibid. If the correct legal standards are followed and

sufficient evidence exists in the record, the decision "should not be subjected to second-guessing in the appellate process." Ibid.

Waiver of a juvenile to adult court "is the single most serious act that the juvenile court can perform." Id. at 4. "[O]nce waiver occurs, the child loses the protections and opportunities for rehabilitation which the Family Part affords," and "faces the real possibility of a stiffer adult sentence." State in the Interest of N.H., 226 N.J. 242, 252 (2016). A juvenile convicted in the Criminal Part, upon release from incarceration, also "will have an adult record and will have a more difficult time reintegrating into society." Id. at 255.

Our Supreme Court has recognized juveniles "are typically less mature, often lack judgment, and are generally more vulnerable to pressure than adults." State in the Interest of A.A., 240 N.J. 341, 354 (2020). Juveniles' "emotional, mental, and judgmental capacities are still developing," and "their immaturity makes them more susceptible to act impulsively and rashly without consideration of the long-term consequences of their conduct." State in the Interest of C.K., 233 N.J. 44, 48 (2018).

Thus, "children bear a special status," and "a unique approach must be taken in dealing with juvenile offenders, both in measuring culpability and setting an appropriate disposition." Id. at 67. One of the purposes of the

Juvenile Code, N.J.S.A. 2A:4A-20 to -49, is to remove from children "certain statutory consequences of criminal behavior" and substitute "an adequate program of supervision, care and rehabilitation . . . ."  N.J.S.A. 2A:4A-21(b).

Applying these well-settled standards of review, we affirm Judge Cook's granting of defendant's petition.  We agree with the judge that defendant's ineffective assistance claim satisfies both prongs of the Strickland test with respect to former defense counsel's performance at the waiver and plea hearings.

We first address the State's contention that the judge erred in relying upon defendant's representations and in finding him credible.  The State argues defendant testified at the evidentiary hearing that he never would have agreed to waive to the Criminal Part if he had known it meant he would be subject to "Megan's Law for life" or "PSL."  The State asserts defendant heard the terms of the plea agreement placed on the record at the waiver hearing by the assistant prosecutor:  defendant would plead guilty to third-degree endangering the welfare of a child, and the State would recommend a five-year sentence of non-custodial probation, subject to Megan's Law conditions for life and successful completion of the Bonnie Brae residential program.

The State further avers that Judge Call explained to defendant Megan's Law conditions "for life," and that these conditions create "a very significant

disability." Following a recess, the State maintains defendant had only "one lingering question before the recess," which was what the consequences of Megan's Law "for life" meant. In the State's view, defendant indicated his former counsel had "explained that lingering issue to him during the recess," and Judge Call reiterated to defendant that he was required "to be under supervision for [fifteen] years," and defendant indicated he understood what the judge told him. Defendant counters Judge Cook concluded he imposed a sentence not authorized by the waiver and conditional plea agreement entered by defendant on September 5, 2013, necessitating the vacation of the waiver.

Having reviewed the record and Judge Cook's detailed decision, we are satisfied defendant proved both Strickland prongs and prevailed on his ineffective assistance of counsel claim. Contrary to the State's contention, VanGilst's testimony at the PCR evidentiary hearing established that the State mistakenly thought that PSL was a component of Megan's Law and defendant's acceptance of the plea agreement—which included Megan's Law—sufficiently placed him on notice he would be subject to PSL.

Based on that misconception of the law, the State did not reference PSL in its written communications with defense counsel or when it placed the waiver and plea agreement on the record at the waiver and plea hearings. The

transcripts of the waiver, plea, and sentencing hearing also support Judge Cook's determination that defendant was credible when he testified he was never advised of the PSL condition if he waived to adult court before or after the waiver hearing.

Moreover, we agree with Judge Cook's determination that PSL "is a material consequence," and "is different or more severe than the agreement." Judge Cook concluded that given the abrupt manner in which defendant was induced by his former counsel to consent to the transfer of jurisdiction to adult court, defendant established the first Strickland prong.  Furthermore, the judge found defendant satisfied the second Strickland prong because he established that he was prejudiced by his former counsel's handling of the wavier proceeding and plea negotiations.

Given the nature of the charge and the strength of the State's proofs, it was incumbent upon former defense counsel to inform defendant whether he would be subject to PSL separate and apart from Megan's Law and the consequences of PSL, and the imposition of PSL violated the terms of the waiver and plea agreement.  The judge was well within his factfinding prerogative in inferring and concluding from the testimony that former defense counsel seemingly was

unaware that PSL would be imposed if defendant consented to the waiver and conditional plea agreement, and therefore never discussed PSL with defendant.

We note that Judge Call used the term "CSL" at the waiver hearing, not PSL. CSL and PSL are not identical. In State v. Brown, our Supreme Court explained that in 2003, the Legislature replaced CSL with [PSL], "a more restrictive post-release regime. L. 2003, c. 267." 245 N.J. 78, 92 (2021). Accordingly, on this record, the lack of specificity as to PSL, combined with the confusion of referring to CSL, warrants the grant of PCR.

Applying the law governing our review, we affirm the grant of defendant's petition. We are satisfied that former defense counsel's performance was deficient, and defendant satisfied his burden under both prongs of the Strickland test. We thus have no basis upon which to overturn the judge's findings, which are based on credible evidence in the record and his opportunity to observe the testimony firsthand.

Affirmed. Stay of the PCR order is hereby vacated.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1544-23