130 N.J. Super. 222 (1974)
326 A.2d 78
STATE OF NEW JERSEY, PLAINTIFF,
v.
JOSEPH DI LUZIO, DEFENDANT.
Superior Court of New Jersey, Law Division.
August 22, 1974.
Supplemental Opinion October 7, 1974.
*226 Messrs. Ralph E. Faasse and John J. Woods, Asst. Prosecutors, for the State (Mr. Joseph D.J. Gourley, Prosecutor of Passaic County, attorney).
Mr. Stephen B. Glatt, Assistant Deputy Public Defender, for defendant (Mr. S. Richard Schiffman, Deputy Public Defender, attorney).
MARTIN, R., J.D.C., Temporarily Assigned.
Defendant Joseph Di Luzio moves to suspend proceedings and to be placed under supervisory treatment pursuant to N.J.S.A. 24:21-27(a)(1). He is charged in Indictment 576-74 with unlawful possession of heroin, contrary to N.J.S.A. 24:21-20. In addition, defendant was charged in the Paterson Municipal Court with unlawful possession of marijuana under 25 grams and with unlawful possession of narcotics implements. All of these alleged violations occurred on January 12, 1974, and arose from the same transaction.
The State presents three arguments in opposition to the motion to suspend proceedings. It should be noted that since Chapter 21 of Title 24 was enacted in October 1970, N.J.S.A. 24:21-27 has remained largely unconstrued, so the points raised by the State in opposition to the motion to suspend are of initial consideration to the court.
In construing the suspension statute, the court is compelled to give primary regard to the essential purposes for which the particular legislation was enacted. N.J. Builders, Owners & Managers Ass'n v. Blair, 60 N.J. 330, 338 (1972); State v. Madden, 61 N.J. 377 (1972); Seatrain Lines, Inc. v. Medina, 39 N.J. 222 (1963). The words contained *227 in the statute must be given their ordinary and primary meaning in the absence of statutory definition of those words. Fahey v. Jersey City, 52 N.J. 103, 107 (1968); Watt v. Mayor, etc., Franklin, 21 N.J. 274 (1956). An inflexible, mechanical and literal construction would be inappropriate. Construction "must not be unduly narrow or artificial or disregard manifest legislative intention." State v. Rucker, 46 N.J. Super. 162, 167 (App. Div. 1957), certif. den. 25 N.J. 102 (1957). Rather, the statute must be construed according to the ordinary meaning of its terms in conjunction with the policy and spirit of the law as it is reflected in the events leading to its enactment and the substantive form in which it was enacted.
Initially, the State contends that defendant cannot avail himself of the benefits of the suspension statute since he has a prior narcotics disposition in June 1967 when he received a three-month suspended sentence for the use of narcotics in violation of N.J.S.A. 2A:170-8. It is argued that as a result of this prior disposition he cannot be considered a first offender within the meaning of N.J.S.A. 24:21-27. This objection is raised even though the Controlled Dangerous Substance Registry reports no prior record of controlled dangerous substance offenses.
N.J.S.A. 24:21-27(a) defines a first offender in the alternative as "any person who has not previously been convicted of any offense under the provisions of this act" or who has not been previously convicted "subsequent to the effective date of this act under any law of the United States, this State, or any other State relating to narcotic drugs * * *."
While not explicitly so stated in the statute, it is apparent from a reading of N.J.S.A. 24:21-27(a) that the phrase "[conviction] under any law of * * * this State * * * relating to narcotic drugs," would encompass a prior drug-related disorderly persons conviction and bar an application of the suspension statute.
*228 However, the plain meaning of the language in subsection (a) mandates that first offender status is in part determined by searching out such convictions occurring "subsequent to the effective date of this act," January 19, 1971.[1] For the purpose of evaluating first offender status, this would exclude from consideration drug-related disorderly persons convictions occurring prior to the effective date of Title 24.
This construction of N.J.S.A. 24:21-27 is buttressed by the statutory treatment of criminal convictions bearing on the question of first offender status. The consideration of such convictions is limited to adjudications "under this act." Thus, criminal convictions occurring prior to the enactment of Title 24 cannot be considered in determining first offender status.
Consequently, each alternative portion of the statutory definition of first offender, read individually, and in conjunction with each other, reflects an intent on the part of the Legislature to establish the effective date of Title 24 as the chronological determinant in evaluating first offender status.
In establishing this chronological determinant the Legislature is implementing its reassessment of the approach to the addiction and narcotics abuse problem which is embodied in Title 24. The purposes behind granting a suspension of proceedings for certain first offenders charged with the use or possession of narcotics is to insure "that youthful offenders are not saddled with a lifetime arrest record"[2] and to channel such offenders into appropriate treatment and supervisory programs.[3]
*229 While treatment is not the single, absolute answer in curbing drug abuse, an intensive treatment program may be the best hope of combatting the drug problem. The wisdom of a treatment approach was recognized as early as 1964 when the Legislature enacted N.J.S.A. 30:6C-1 et seq., which permits addicts to voluntarily commit themselves for hospital treatment in lieu of incarceration in appropriate cases.[4]
In light of this legislative reassessment and the statutory construction of the language of subsection (a) treated above, defendant's prior drug-related disorderly persons adjudication cannot be raised by the State since it clearly did not occur "subsequent to the effective date" of Title 24. Therefore, Joseph Di Luzio must be deemed to be a first offender within the meaning of the suspension statute and, in fact, that is his status in the eyes of the Drug Registry.
The second objection to suspension raised by the State concerns the charge against defendant of possession of narcotic implements. The State contends that possession of narcotics implements is not a charge encompassed under N.J.S.A. 24:21-20(a)(1), (2) and (3) and (b), and therefore defendant does not properly fall within the offense requirement of the suspension statute.
While it is acknowledged that the narcotics implements charge is not a violation of N.J.S.A. 24:21-20 and that defendant is thus charged with an act not within the specific language of N.J.S.A. 24:21-27, the argument raised by the State on the point cannot prevail, given the intent behind permitting a suspension of proceedings.
Suspension is granted for certain first offenses, that is, for the use or possession of certain controlled dangerous substances. In this case the possession of narcotic implements is a natural consequence of the use of heroin. To permit suspension for the use of heroin by a first offender but *230 to prohibit suspension because defendant is charged with possession of implements to inject that heroin, is an illogical and inconsistent position, given the legislative purpose not to saddle a first offender with a criminal record where obvious rehabilitation potential exists.
The reason that offenses under N.J.S.A. 24:21-20 are specified at all in the statute is to restrict the scope of suspension to cases of use and possession and to differentiate them from charges under N.J.S.A. 24:21-19 which entail the sale and distribution of controlled dangerous substances. The specifications of offenses under N.J.S.A. 24:21-20 cannot be said to be directed against suspension where possession of implements is also charged. Rather, the specification is designed to prohibit suspension where sale or distribution is charged.
Consequently, the second argument of the State opposing suspension must, of necessity, fail.
The final objection to suspension raised by the State is that in an affidavit in support of a search warrant by which the evidence for the instant charges was obtained, a statement was made indicating that a buy was made from defendant by an undercover agent. The State argues that the court should in its discretion deny suspension because under N.J.S.A. 24:21-27(c) (1) this information would render defendant's continued presence in the community a danger to that community.
Concrete proof of selling or distributing controlled substances in violation of N.J.S.A. 24:21-19 would definitely bar an application of the suspension statute. Even if defendant was not officially charged with a violation of N.J.S.A. 24:21-19, reliable evidence indicating that defendant was a seller of drugs could be considered by the court in the application of its discretionary powers to deny suspension under N.J.S.A. 24:21-27(c). It should be noted that applications for suspension are not to be automatically, mechanically or arbitrarily granted. The Legislature has provided through subsection (c) for the application *231 of judicial discretion which can call into play additional pertinent information concerning the applicant, considerations upon which a grant or denial of the motion can be predicated even if the subsection (a) requirements have been satisfied.
In the matter at hand defendant was never charged with the sale or distribution of narcotic drugs, pursuant to the information in the affidavit. In addition, the affidavit was never produced for the court's perusal and no proof was adduced by the State at the hearing on this motion of the substantive truth of the contents of the affidavit.
The court cannot deny suspension merely on an unfounded speculative reference to a sale of narcotics. If reliable evidence had been presented indicating that defendant engaged in the sale of narcotics, even though no formal charge was levied, this would have been a proper consideration in determining whether and to what extent defendant would pose a danger to the surrounding community. Since no such evidence was provided this court must deny the State's objection on this point.
Based upon the above determinations, the court will grant a suspension of proceedings pursuant to N.J.S.A. 24:21-27 and will order defendant to be placed in an appropriate supervisory treatment program. The granting of this suspension is based upon the legal determinations previously made but also on the court's evaluation of defendant and the likelihood that such a grant would benefit him and not create a danger to the safety and welfare of the community.
Notice of this grant of suspension shall be given to the Controlled Dangerous Substance Registry.
After the issuance of an opinion[1a] permitting defendant to enter an order of suspension pursuant to N.J.S.A. *232 24:21-27(a)(1), the State petitioned the court to reconsider point three of the opinion dealing with the danger raised by permitting defendant to remain in the community. The petition was granted and the State given an opportunity to present additional evidence. In addition to oral argument the State at that time presented two documents. The first was a copy of an affidavit[2a] dated January 12, 1974 by a Detective Michael Pasquale of the Paterson police force which he utilized in petitioning for a search warrant of defendant's residence. The second is a complaint signed by two Paterson detectives in which they charge that defendant is guilty of "conspiracy to purchase a narcotic" on July 8, 1974.
The first affidavit inidcates and/or charges that there was a heroin sale or sales by defendant from his apartment on January 12, 1974. The troublesome aspect of this proffer of evidential information is that the specific date alleged, January 12, 1974, is the same date alleged in grand jury Indictment No. 576-74, which is the subject matter of defendant's application for suspension. In that indictment the grand jury does not charge defendant with sale, but rather with possession. The court can validly assume that the grand jury (since the dates of the affidavit and the indictment are similar, i.e., January 12, 1974) did not find requisite proof to indict defendant on a sale. He was indicted only for possession. It is further to be noted that since January 12, 1974, and to and through September 27, 1974, the date that the State reargued point three of the original opinion, there have been no indictments handed down against defendant concerning sale. If, in fact, the State desires to rely upon the affidavit which was utilized in securing a search warrant for the apartment to show a valid sale of drugs, is it not also valid to have the State indicate why, for nine months, there has been no indictment issued or pending against defendant for "sale". *233 This large hiatus in point of time takes the edge off the probative effect of the affidavit.
The second document submitted by the State, a complaint made by two Paterson detectives arising out of an incident on July 8, 1974, relates that one Narcie Jones was apprehended with several tinfoil packets of alleged heroin in hand on the street near defendant's automobile or an automobile operated by defendant. On being apprehended Jones stated "they're not for me, I was buying the drugs for them," indicating defendant and his wife. Throughout the argument the court was not made aware of the status of this complaint of July 8, 1974, and only after the hearing on September 27, 1974 did the Court ascertain that the grand jury heard the matter on September 30, 1974 and found "no bill," thereby refusing to indict defendant. As a result of the grand jury's action the complaint of July 8, 1974 is without probative value. Failure to indict by the grand jury, in this instance, removes any persuasive effect the complaint may have for a suspension hearing.
At the hearing the State produced no oral testimony, but defendant did place on the stand his social worker, Mr. Higgins, from the Department of Health, Division of Narcotics and Drug Abuse Control. Higgins outlined a program which defendant is presently involved in regarding drugs. He indicated that defendant applied for supervision on December 14, 1973,[3a] and was accepted January 28, 1974. The delay in approval was administrative and not due to defendant's acts. Higgins further testified that since defendant's acceptance into the program he has had three positive urine samples, indicating the use of drugs or drug-related products.[4a] Defendant's program consists of counseling and methodone maintenance. Significantly, Higgins indicated his belief that defendant *234 can cope with his drug problem; that he is not a drug abuser at the present time; that he is capable of continued employment and is, in fact, employed by a trucking company; and that, in his opinion, defendant is not a danger to the community.
By express statutory language, N.J.S.A. 24:21-27(c)(1) eliminates from the rolls of prospective applicants for suspension proceedings any defendant whose presence in the community would pose a danger to that community. A defendant, in order to fall within this prohibited category, would have to be shown to possess a demonstrated recidivism and insatiable need for drugs that would lead to society again falling prey to his established criminal pattern. 28 C.J.S. Supp. Drugs & Narcotics § 231.
The court is cognizant of a number of legislative goals in providing a drug offender with a viable alternative to rehabilitation other than incarceration. Among these goals is the protection of the offender, the prevention of contamination of others, and the protection of the public. People v. Jennings, 71 Misc.2d 798, 336 N.Y.S.2d 863 (Sup. Ct. 1972).
Considering the additional evidence submitted by the State as outlined in this supplemental opinion, the court finds that defendant is still a candidate for the suspension proceeding outlined in N.J.S.A. 24:21-27(a)(1).
NOTES
[1] N.J.S.A. 24:21-1 footnote as to effective date.
[2] "Drug Abuse  Problem of the Decade," Special Message to the Legislature, Governor William Cahill, April 27, 1970.
[3] N.J. State Law Enforcement Program Assistance Agency, Staff Report: a Desk Book on Drug Abuse, 15 (1969).
[4] N.J. Legislature, Narcotic Drug Study Commission, Final Report 1967, 7 (1969).
[1a] Approved for publication September 23, 1974.
[2a] Referred to in the original opinion but never physically produced by the State on original argument, although the State contends an offer was made.
[3a] Note this date preceded the indictment date of January 12, 1974.
[4a] Higgins testified that this is normal for persons in defendant's program, considering they were drug users.