STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. RONALD
COLLINS, DEFENDANT-RESPONDENT.

Argued March 22, 1982—Decided August 3, 1982.

*Thomas E. Bracken*, Assistant Prosecutor, argued the cause
for appellant (*Brian M. Laddey*, Sussex County Prosecutor,
attorney).

*Paul Alongi* argued the cause for respondent.

*Daniel Louis Grossman*, Deputy Attorney General, argued the
cause on behalf of *amicus curiae* Attorney General of New
Jersey (*Irwin I. Kimmelman*, Attorney General of New Jersey,
attorney).

The opinion of the Court was delivered by

WILENTZ, Chief Justice.

Respondent, Ronald Collins, was indicted for possession of cocaine in violation of *N.J.S.A.* 24:21–20. He applied for pretrial intervention (PTI) pursuant to *N.J.S.A.* 2C:43–12 *et seq.* of the Code of Criminal Justice (Code). The prosecutor denied the application, taking the position that Collins was ineligible for diversion because of a previous conviction of a controlled dangerous substance offense. The prosecutor's position was based on the belief that the absolute bar against diversion of second offenders contained in Section 27 of the Controlled Dangerous Substances Act (CDS Act) applied to Collins' application under the Code. The trial court permitted pretrial intervention despite the prosecutor's denial, holding that there was "a suggestion of an abuse of discretion." The Appellate Division reversed, concluding that pretrial diversion under the Code is not automatically barred for second offenders despite the bar of the CDS Act, but that the trial court's admission of Collins into PTI over the objection of the prosecutor was based on an insufficient record.

We affirm the judgment below. We agree with the Appellate Division's perceptive analysis and in particular agree that the Court, when it revised *R.*3:28 simultaneously with the adoption of the Code intended to substantially conform that Rule to the pretrial intervention provisions of the Code. *See R.*3:28(a) (designation of judge to act on PTI matters "in accordance with *N.J.S.A.* 2C:43–12 and –13"); *R.*3:28(b) and (c) (role of program director and prosecutor; maximum period of diversion). This appeal does not involve any conflict between the Code and this Court's revised PTI Guidelines, despite the difference between them concerning the availability of pretrial diversion to second offenders. Given the nature of Collins' prior conviction (simple possession), it would not appear to make any difference whether the standards of the Code or of the Guidelines were to be applied. *Compare* Guideline 3(e) *with N.J.S.A.* 2C:43–12(a). *See also State v. Collins*, 180 *N.J.Super.* 190, 196, 198 (App.Div. 1981).

The conflict here, if any, is solely between the Code's pretrial intervention provisions and the conditional discharge sections of the CDS Act, in particular *N.J.S.A.* 24:21–27.[1] These two statutes clearly provide for two separate pretrial diversion procedures. The Code's procedures are general and, on their face, applicable to all offenses; the CDS Act is most limited, applicable only to certain drug offenses, namely those of a personal nature involving possession and use. The Code explicitly preserves the pretrial diversion procedures of the CDS Act.[2] The conflict arises because the CDS Act clearly provides that a person, like Collins, previously convicted of a narcotics offense may never again be diverted under that Act, whereas the Code contains no such prohibition. We must determine whether the Legislature, through the Code, intended to make pretrial intervention available under the Code to drug offenders who were, and are, ineligible under the CDS Act because they are second offenders.

The CDS Act stood for approximately nine years as the only statute providing for pretrial diversion. It permits such diversion only of those who have not previously been convicted or diverted under that Act and only for the offenses mentioned above, namely possession or use of drugs (including being under the influence of drugs). The negative effect of the section is clear: no second offender is to be given conditional discharge, no one previously diverted is to be given conditional discharge, and no one accused of non-personal offenses, for instance, the manufacture, sale or distribution of drugs, is to be conditionally

---

[1] *See State v. Sobel,* 183 *N.J.Super.* 473 (App.Div.1982), for another example of the interrelationship of Code provisions and the CDS Act. The Appellate Division there decided that the presumptive non-custodial sentencing for first offenders provided in *N.J.S.A.* 2C:44–1(e) applies to first offenders under the CDS Act.

[2] *N.J.S.A.* 2C:43–22 provides that:

Nothing contained in this act is intended to supersede, repeal or modify the authority granted and procedure prescribed under section 27 of P.L. 1970, c. 226 (C.24:21–27).

discharged.[3] These prohibitions are part of a legislative policy embodied in a comprehensive criminal code for controlled dangerous substances offenses. That policy would run head on into *any* statute that permitted pretrial diversion, under any name, of drug offenders where the CDS Act did not. In short, standing alone, the comprehensive CDS Act does not tell us solely who *may* be diverted and under what circumstances, but who must *not* be.

Despite the comprehensiveness of the CDS Act, we have concluded that the Legislature intended to change that policy when it adopted the Code. The Legislature's treatment of pretrial intervention in *N.J.S.A.* 2C:43–12 *et seq.*, is all-encompassing, seeming to respond to this Court's invitation to occupy the field. *State v. Leonardis*, 73 *N.J.* 360, 374–375 (1977) (*Leonardis* II). It was aware of that part of the field in which the CDS Act operated: it explicitly mentions Section 27 in two places (*N.J.S.A.* 2C:43–12(g) and –22). With the various restrictions and limitations of Section 27 of the CDS Act therefore clearly in mind, the Legislature enacted a comprehensive pretrial intervention system that directly conflicted with two of the three restrictions of the CDS Act. It declared generally, and without exception, that second offenders "ordinarily" would be ineligible, whereas the CDS Act absolutely foreclosed eligibility to drug offenders on a second offense. This declaration under the Code can be regarded as one of its most important policy pronouncements, occurring prominently at the beginning of its provisions. Secondly, the Code makes pretrial intervention

---

[3]During this entire period the Court's pretrial intervention rules, R.3:28, clearly conflicted with this statute. For example, they explicitly permitted, under certain circumstances, those charged with sale or distribution of drugs to be enrolled in the ·pretrial intervention program; they did not absolutely prohibit those previously convicted or those who had previously been enrolled. While the Court was obviously aware of the parallel diversion provisions of Section 27, and presumably aware of the conflict with our own rule, see *State v. Leonardis*, 71 *N.J.* 85, 95 n. 5 (1976) (*Leonardis* I) and *State v. Leonardis*, 73 *N.J.* 360, 374–75 n. 6 (1977) (*Leonardis* II), the issue of the conflict between the two was never raised or passed on by the Court.

available for *all* offenses, there are no exceptions provided, whereas the CDS Act pretrial diversion is confined very narrowly to offenses involving use and possession of controlled dangerous substances. These considerations alone persuasively suggest that the Legislature intended thereby to make pretrial intervention available under the Code's procedures to those who would be barred under the restrictive scope of the CDS Act. The conclusion is made all but irresistible by the Legislature's explicit *acceptance* of the one remaining restriction of the CDS Act, that prohibiting re-enrollment. The Code in Section 12(g), explicitly referring to the CDS Act's Section 27, bars re-enrollment for anyone previously enrolled either under the Code or under the CDS Act. The Legislature's intent *not* to apply CDS Act diversion ineligibility for second offenders and non-personal offenses to Code PTI is thus demonstrated by its explicit incorporation of one, and only one, CDS Act ineligibility factor into the Code, namely re-enrollment ineligibility.

The Code therefore made pretrial intervention available under its procedures to those charged with their second drug offense or with non-personal drug offenses; pretrial diversion remained unavailable to such defendants under the procedures of the CDS Act. Re-enrollment, however, was unavailable to any offender under either the Code or the CDS Act.

Our conclusion is based not only on the policies and provisions of both the Code and the CDS Act, but also on the certain awareness of the Legislature of the provisions of this Court's rules as they existed parallel to the provisions of the CDS Act for some nine years. Those rules not only allowed, but were interpreted in actual cases to permit, pretrial intervention for drug offenders charged with a second offense and those charged with non-personal offenses. *State v. Leonardis*, 71 *N.J.* 85 (1976) (*Leonardis* I); *State v. Bender*, 80 *N.J.* 84 (1979). The Code, which has pretrial intervention procedures similar to those provided in our rules (and undoubtedly fashioned after them) as distinguished from the procedures found in the CDS Act, was apparently intended to incorporate the treatment our rules gave

to second offenders and those charged with non-personal drug offenses. In effect the Legislature, aware of the conflict between our rules and the CDS Act, opted for the eligibility provisions of our rules concerning second offenders and non-personal offenses, but opted for the eligibility provisions of the CDS Act concerning re-enrollment.

Section 22 of the Code (*N.J.S.A.* 2C:43–22) confirms this construction. It explicitly retains the option of pretrial diversion under the CDS Act. It does not, however, indicate a legislative intention that the prohibitions, both explicit and implicit, of that Act were intended to be retained for drug offenders applying for Code PTI. On the contrary the Code's reference to Section 27 is not in the usual language (which might be "nothing contained herein shall be taken to amend, modify or repeal any of the provisions of Section 27"), but rather "[n]othing contained in this act is intended to supersede, repeal or modify the *authority* granted and *procedure* prescribed under Section 27 . . . ." (Emphasis supplied). The *authority* to admit into pretrial diversion was to remain as broad as it had been and the same *procedure* under that authority was to remain available. But the section does not purport in any way to superimpose the *restrictions* of Section 27, on the authority and procedure of the Code's PTI provisions. In fact the careful phraseology tends to confirm the conclusion that the Legislature was aware it was, in effect, establishing an authority and procedure parallel to those contained in Section 27.

These two pretrial intervention tracks are not inconsistent as a matter of policy. Defendants charged with drug offenses under circumstances which require very careful scrutiny of applicants for pretrial diversion, such as prior convictions and serious offenses, will qualify only under the Code track with its greater restrictions on admission. Under the Code, applications for enrollment face the barriers of the program director, the prosecutor, and, sometimes, the court; under the CDS Act only the court's consent is required. This lesser degree of safeguard for the CDS Act is appropriate in view of the offenses subject to

diversion under the CDS Act, namely use, possession, and being under the influence. It supports our further conclusion that when the Legislature, in effect, modified the restrictions implicit in the CDS Act (by allowing diversion under the Code for drug offenders inconsistent with the CDS Act) it did not intend those modifications to apply to applications for diversion under that Act. In other words, one accused of distribution of controlled dangerous substances still will be unable to obtain diversion through the consent of the judge under the Controlled Dangerous Substances Act; that person will have to apply under the Code and go through the procedures that involve the program director, the prosecutor, and the court.

Nor is there any inconsistency in the fact that supervisory treatment under the Controlled Dangerous Substances Act allows for as much as three years of supervision whereas under the Code the maximum period of diversion is one year. The extended three year period of treatment is obviously designed to cover drug addicts, whose rehabilitation often requires extended treatment. The Legislature presumably concluded that extended periods of supervision were inappropriate under the Code which covers all other offenders.

While not before us, we take this opportunity to suggest that one who qualifies for diversion under both the Code and the CDS Act (a first offender, not previously diverted, charged either with use or possession) should apply under the Controlled Dangerous Substances Act, rather than under the Code. Such construction of the two statutes would give effect not only to the Legislature's specific treatment of such offenses, but also to the court's ability, under the CDS Act, to subject the offender to a longer period of supervisory treatment, and also to dispose most simply of the minor personal offense.

We therefore affirm the Appellate Division's judgment remanding this matter to the trial court for its consideration of Collins' application for pretrial intervention after the prosecutor expands his reasons for denial. If the only reason is Collins'

prior conviction, the court shall review that denial pursuant to the standards set forth in *State v. Dalglish*, 86 *N.J.* 503 (1981), and the applicable guidelines of the Code and our rules.

*For affirmance*—Chief Justice WILENTZ, Justices PASHMAN, CLIFFORD, SCHREIBER, HANDLER, POLLOCK and O'HERN–7.

*For reversal*—None.