STATE OF NEW JERSEY, PLAINTIFF, v. JANICE TELCHER, DEFENDANT.

Superior Court of New Jersey
Law Division Essex County

Decided March 10, 1987.

*Steven Farman* for plaintiff (*Herbert J. Tate, Jr.,* Essex County Prosecutor, attorney).

*Scott A. Krasny* for defendant (*Schragger, Schragger & Levine,* attorneys).

NEWMAN, J.S.C.

This is a motion by defendant, Janice Telcher, for a suspension of proceedings and conditional discharge pursuant to *N.J. S.A.* 24:21–27. Telcher was indicted for violating *N.J.S.A.* 24:21–22(a)(3) by obtaining controlled dangerous substances by fraud. The pertinent facts in this case are as follows.

Janice Telcher is a registered nurse who was employed by the University of Medicine and Dentistry of New Jersey (UMDNJ) in 1985. Her duties at the hospital included dispensing prescription drugs to patients. Six patients complained to Telcher's supervisor that they had not received prescribed pain medication at various times between September 1 and October 31, 1985. The supervisor reviewed the narcotics sheet and found that Telcher had signed for, but failed to dispense, 12 Percodan tablets and 8 codeine tablets. This matter was subsequently reported to the police.

Telcher voluntarily waived her rights and admitted taking the Percodan and codeine tablets for her own personal use. She stated that, at the time, she was under severe emotional and physical stress caused by problems at work, her personal life and an illness. There is some disagreement as to the exact

number of tablets taken by Telcher, however this is not significant for the purposes of this motion.

Telcher's license to practice nursing was temporarily suspended on September 12, 1986 by the New Jersey State Board of Nursing pending a formal hearing. This hearing was held on October 31, 1986. The board noted that Telcher had been drug free for over one year and that her past use of drugs appeared to be an isolated episode. However, it concluded that she had "used poor judgment and dishonesty and deception to divert and use the drugs in the course of her nursing practice." Consequently, her license was temporarily suspended and she was placed on probation for two years while still being allowed to practice nursing.

On November 25, 1986, Janice Telcher was indicted under *N.J.S.A.* 24:21–22(a)(3) for obtaining controlled dangerous substances by fraud. Her application for admission into a pretrial intervention program (PTI) was denied by the Essex County Prosecutor's Office under the guidelines set forth in *N.J.S.A.* 2C:43–12(e)(1) and *R.* 3:28. In considering the nature of Telcher's offense, the prosecutor found that "[t]he strong public interest in feeling safe with those charged with the care and welfare of the public has been breached." The prosecutor thought that, given the nature of Telcher's acts, she had not presented compelling reasons justifying her admission into PTI, and concluded that the value of supervisory treatment was outweighed by the public need for prosecution. The decision of the prosecutor in not recommending her for enrollment in PTI was subsequently affirmed by this court. Telcher now seeks a conditional discharge under *N.J.S.A.* 24:21–27.

The question before this court is whether a defendant charged with a violation of *N.J.S.A.* 24:21–22(a)(3) rather than a violation of *N.J.S.A.* 24:21–20 is eligible for a suspension of proceedings and conditional discharge under *N.J.S.A.* 24:21–27. The benefits of the conditional discharge provision are available to first offenders charged with simple possession or use of

controlled dangerous substances. Telcher was charged with a violation of *N.J.S.A.* 24:21–22(a)(3) which proscribes obtaining possession of a controlled dangerous substance by misrepresentation, fraud, forgery, deception or subterfuge. This court must determine if the benefits of a conditional discharge should be extended to her even though her offense does not fall within the express terms of the statute.

Telcher, relying on *State v. Sanders,* 169 *N.J.Super.* 596 (Law Div.1979), argues that she should be eligible for conditional discharge consideration because the offense with which she is charged is treated less severely by way of a sentencing maximum of three years than the offense of possession or use of certain drugs, which has a sentencing exposure of five years. Given the statutory goal of rehabilitation, defendant reasons that the inclusion of this type of offense promotes the legislative purpose of § 27.

In addressing defendant's argument and the opinion in *Sanders,* several factors have to be considered. First, a close examination of the language of the conditional discharge statute, as well as the legislative history and intent underlying it, is in order. Second, this court must adhere to the contruction guidelines applicable to the statute as set forth in *State v. Collins,* 90 *N.J.* 449 (1982), and interpret § 27 accordingly. Finally, attention must be given to whether any policy reasons justify extending the availablity of conditional discharges beyond the scope of the express language of *N.J. S.A.* 24:21–27 as other courts of equal jurisdiction have done.

 In interpreting the conditional discharge statute, the court must utilize basic principles of statutory construction. One cardinal principle is that in the absence of a clear indication to the contrary, the words used in a statute are to be given their plain, ordinary and commonly understood meaning. *Fahey v. City of Jersey City,* 52 *N.J.* 103 (1968). The court must also act in furtherance of the purpose and goal of the statute. *State v. Madden,* 61 *N.J.* 377 (1972). In this regard, consider-

ation of the statutory history is relevant in discerning the legislative intent underlying the statute. *Id.* at 389. The instant matter requires such an examination of the language and legislative intent of *N.J.S.A.* 24:21–27 in order to resolve this motion.

The language of the conditional discharge provision, *N.J.S.A.* 24:21–27, expressly states when a suspension of criminal proceedings under the Controlled Dangerous Substances Act, *N.J.S.A.* 24:21–1 *et seq.*, is appropriate. It provides, in relevant part, that:

A. Whenever any person who has not previously been convicted of any offense ... relating to narcotic drugs, marihuana, or stimulant, depressant, or halucinogenic drugs, is charged with or convicted of any offense under section 20 of P.L.1970, c. 226 (C. 24:21–20), the court, upon notice to the prosecutor and subject to subsection c. of this section, may on motion of the defendant or the court:

(1) Suspend further proceedings and ... place him under supervisory treatment upon such reasonable terms and conditions as it may require....

*N.J.S.A.* 24:21–27 enumerates both the objective and subjective criteria which the court must consider in making a determination under this section. There are three objective standards that must be satisfied in order to suspend proceedings; namely: (1) defendant must have no prior convictions for any drug-related offense; (2) defendant must be charged with an offense under *N.J.S.A.* 24:21–20, that is, one involving the possession and/or use of a controlled dangerous substance; and (3) defendant must be willing to attend supervisory treatment. The final section of the statute, subsection c., sets forth two subjective criteria for the court to consider once defendant has satisfied the objective standards. The court must conclude that: (1) defendant's continued presence in the community or in a civil treatment program will not pose a danger to the community; and (2) the supervisory treatment will be adequate to protect the public and benefit defendant by resolving his dependence on or use of controlled substances.

The language of § 27 is clear and unambiguous. The trial court may grant a suspension of proceedings if defendant meets the statutory criteria. In reaching a determination, all relevant factors should be weighed. *State v. Sanders,* 171 *N.J.Super.* 515 (App.Div.1979). However, although the trial court has a fair measure of discretion, the plain meaning of § 27 indicates that the court must act within the confines of the statute.

The initial draft of the conditional discharge provision submitted by the New Jersey Senate in 1970 provided that this procedure would be available to violators of § 20a.(2) and (3) and b, § 26(b) and § 19(b)(3) *Senate Bill* 851 (1970). Thus, § 27 as originally drafted would have applied to certain distribution offenses under § 26b and § 19(b)(3), as well as to use and possession offenses under § 20. However, the statute as adopted deleted all references to distribution offenses. Instead *N.J.S.A.* 24:21–27 explicitly limits the applicability of conditional discharge to persons charged with § 20 violations. In view of this legislative course, the elimination of other classes as being eligible for conditional discharge cannot be viewed as accidental. The Legislature declined to extend this opportunity to more cupable offenders such as the distributors of controlled dangerous substances. Similarly, none of the Legislature's subsequent amendments to this statute enlarged the class of persons for whom conditional discharge was available. *N.J.S. A.* 24:21–27. *See L.*1971, *c.* 3, § 11; *L.*1979, *c.* 86, § 10; *L.*1980, c. *105, § 4; L.1984,* c. *91, § 2.*

Judicial interpretation of this statute has emphasized the rehabilitative goal of *N.J.S.A.* 24:21–27. To be sure, the conditional discharge provision was intended to afford first offenders who are involved with personal drug use and who pose no threat to the community the chance to obtain treatment. *State v. Alston,* 71 *N.J.* 1 (1976). In this way, youthful offenders and

early stage drug users are given a chance to undergo rehabilitation and avoid the stigma of a criminal conviction.[1]

However, the rehabilitative intent of *N.J.S.A.* 24:21–27 does not, in and of itself, justify an expansive interpretation by the courts which is contrary to the clear language of the statute.

Additional support for a narrow reading of *N.J.S.A.* 24:21–27 is contained in *State v. Collins*, 90 *N.J.* 449 (1982). In *Collins*, the Court had occasion to consider the purpose and scope of § 27, as well as how the provision should be applied.

There, defendant was a second offender indicted for possession of cocaine in violation of *N.J.S.A.* 24:21–20. His application for pretrial intervention was denied by the prosecutor who claimed that Collins' ineligibility for diversion under *N.J.S.A.* 24:21–27 carried over into PTI. In this context, the court examined the interrelationship of pretrial intervention and conditional discharge, providing guidance for trial courts in this area.

The *Collins* Court emphasized the explicit scope of the conditional discharge provision: it applied only to first offenders charged with the offenses of possession or use of drugs. 90 *N.J.* at 451. While the PTI rules allow diversion of persons charged with the sale or distribution of drugs, § 27 clearly does not. The Court stated that the Controlled Dangerous Substances (CDS) Act taken alone tells not only who is eligible for diversion, but also who is not. *Id.* at 452.

The Court further concluded that the Legislature intended to change the narrow and comprehensive policy of the CDS act when it adopted the more expansive Code of Criminal Justice, in part by extending PTI to a wider class of persons. Thus, the court sanctioned a narrow construction of § 27 in contrast to

---

[1]*See* Governor William Cahill, "Drug Abuse-Problem of the Decade," Special Message to the Legislature (April 27, 1970).

the more expansive code, finding that this result furthered the legislative intent behind these procedures.

*Collins* clearly requires courts to apply § 27 strictly, confining it to first time offenders charged with simple possession or use. First offenders charged with more serious offenses, such as obtaining CDS by fraud or distribution, and second offenders may seek PTI, but not conditional discharge.[2]

█ The clear import of *Collins* is that *N.J.S.A.* 24:21–27 should be strictly interpreted and applied. Such a narrow construction is entirely consistent with the legislative intent of the statute. Pretrial intervention is an avenue open to a large class of offenders, whereas conditional discharge is only available to a limited and specifically identified group. Given this narrow reading of § 27, the conclusion is inescapable that extending conditional discharge to an entirely new class of offenders, namely those charged with obtaining possession of a CDS by fraud under *N.J.S.A.* 24:21–22(a)(3), would be beyond the explicit language and legitimate scope of § 27.

In further support of her contention that conditional discharges are appropriate for violations of *N.J.S.A.* 24:21–22(a)(3), Telcher relies on Law Division cases which have extended § 27 beyond its literal terms. *See State v. D'Ambrosio,* 200 *N.J.Super.* 463 (Law Div.1985) (holding that § 27 extends to possession of drug paraphernalia, a violation of *N.J.S.A.* 24:21–47, where defendant was also charged with possession of marihuana under 24:21–20(a)(4)); *State v. Sanders,* 169 *N.J.Super.* 596 (Law Div.1979); *State v. Di Luzio,* 130 *N.J.Super.* 222 (Law Div.1974)

---

[2]The *Collins* decision is in accord with the principles discussed in the earlier case of *State v. Alston,* 71 *N.J.* (1976), in which the court concluded that a defendant found guilty of possession but not use of heroin was entitled to a § 27 discharge. The court considered the role of § 27 as an alternative to a judgment of conviction for first offenders charged with violations of § 20. In reaching its decision, the *Alston* Court subscribed to the fact that the Controlled Dangerous Substances Act "carefully distinguishes among the various kinds of drug offenses." *Id.* at 3–4.

(holding, in part that defendant charged with unlawful possession of heroin, marihuana and narcotics implements was eligible for a conditional discharge).

In *State v. Sanders,* a case factually resembling this one, a former policeman had been injured during the course of duty. As a result of his injuries, he was hospitalized several times and eventually retired on disability. While injured, Sanders was given Percodan for pain. He was later charged with forging prescriptions for Percodan over a six-month period in violation of *N.J.S.A.* 24:21–22(a)(3).

In concluding that defendant was entitled to a suspension of proceedings and conditional discharge, the *Sanders* court looked to several factors. First, the court found that the legislative goal of deterring the sale and distribution of drugs is facilitated by permitting the suspension of proceedings where defendant is charged with either possession of a controlled dangerous substance or obtaining CDS by means of forged prescriptions. The court observed that the suspension provision was intended to have a rehabilitative effect, specifically, to give drug users a chance to obtain treatment. 169 *N.J.Super.* at 599–600. The second factor considered by the *Sanders* court was the differential between the maximum allowable sentence for a § 22(a)(3) conviction and the sentence for a § 20 conviction. A § 22(a)(3) offense is punishable by a maximum of three years imprisonment, whereas a then conviction for possession or use of Percodan carries a five-to seven-year conviction. *Id.* at 600. The court stated that the rehabilitative goal of the statute applies with "equal if not greater force to a lesser controlled dangerous substance offense." *Ibid.* Finally, the *Sanders* court noted that several New Jersey courts had allowed conditional discharges of persons charged with possession of marihuana. This latter offense was not within the express terms of § 27 due to an omission of a statutory cross-reference following the 1975 amendments to the Controlled Dangerous Substances Act. *Id.*

at 601. From this the court reasoned that the Legislature must have intended to allow the discharge of lesser offenses involving only personal drug use. *Id.* at 602, 405 *A.*2d 453.

In view of the clear language of § 27, its legislative history, and *State v. Collins, supra* which was decided after *Sanders,* the position adopted by the *Sanders* court is untenable. The court's rationale did not differentiate between two crimes with differing degrees of criminal activity which the Legislature chose to treat separately. The Legislature has recognized a distinction between possession and/or use of a controlled dangerous substance and obtaining possession of such a substance by fraud. Each is proscribed by a separate section of the CDS act and conditional discharge is specifically available for one offense but not the other.

The *Sanders* court's argument concerning the punishment of these offenses is also unpersuasive. This rationale confuses two issues with distinct legislative considerations: the issue of punishment and the issue of what class of offenders is entitled to a suspension of proceedings with supervisory treatment.

Finally, the court's reference to possession of marihuana as omitted from the terms of § 27 but within its practical scope has been rendered moot by the 1979–1980 amendments to the statute. The Legislature acted to correct an inadvertent omission in that situation, but it has taken no such measures regarding possession by fraud.

The *Sanders* case is also factually distinct from Telcher's situation. While it is true that both Sanders and Telcher were charged with obtaining possession of Percodan (and, in Telcher's case, codeine) by fraud, the circumstances surrounding their acts are very different. Sanders' use of Percodan began legitimately, he was given a prescription for the drug to combat a medical problem. His criminal act involved forging prescriptions to obtain more Percodan for his own use. Telcher, on the other hand, never had a valid prescription for either Percodan

or codeine. Instead, in her capacity as a registered nurse, entrusted with the duty of dispensing medications to patients, she signed for these drugs and then diverted them for her own personal use. In doing this, she deprived patients of medication prescribed by their doctors. Contrary to her assertions that only she and the hospital were victimized, this court strongly believes that the patients whose drugs she diverted were also victimized. Hospitalized patients are entitled to trust the hospital staff, indeed they must if their treatment is to be successful. Telcher violated this trust; she misused her position as a registered nurse and violated *N.J.S.A.* 24:21–22(a)(3). For these reasons, Telcher's conduct was far more culpable than that of defendant in *State v. Sanders, supra.*

Telcher's case is also distinguishable from *State v. D'Ambrosio, supra,* and *State v. Di Luzio, supra.* The latter cases involved defendants charged with unlawful possession of controlled substances and unlawful possession of drug paraphernalia. The courts involved therein concluded that possessing the instrumentalities of drug use was an inherent part of the offenses of possessing and using the drugs. In the instant case, Telcher was charged with an offense of a completely different nature. Obtaining drugs by fraud is not a necessary prerequisite or an essential part of drug use. It is a distinct offense of a serious nature and should be treated as such.

Telcher, in seeking a conditional discharge, is not only asking this court to extend the scope of *N.J.S.A.* 24:21–27, she is also asking this court to interfere with an executive function of the prosecutor, specifically the decision whether or not to prosecute. Since § 27 does not apply to Telcher's offense, suspending proceedings would amount to a judicial decision not to prosecute. This is contrary to both the statutory and decisional law of New Jersey.

The role of the county prosecutor in the criminal justice system was examined and defined by our highest court in *State v. Winne,* 12 *N.J.* 152 (1953). There, the court reviewed the

relevant New Jersey statutes[3] vesting law enforcement authority in the prosecutor and had this to say:

> The statutes reflect not a sporadic intent but a fixed legislative policy to cast on the county prosecutor responsibility for the detection, apprehension, arrest and conviction of criminals in his county.
>
> . . . .
>
> Clearly the Legislature intended to give him dominant position and the primary responsibility for the enforcement of the criminal laws, not merely by conferring authority on him but by giving him the means of implementing such authority. [*Id.* at 167.]

Finally, the court unequivocally stated that the prosecutor is the "foremost representative of the executive branch of government in the enforcement of the criminal law." *Id.* at 171.

■ Chief Justice Vanderbilt's discussion of the prosecutor's role in *Winne* remains authoritative today. The prosecutor has very broad discretion in deciding which matters will be prosecuted in the county. Ordinarily, such decisions are accorded judicial deference in the absence of a gross abuse of discretion, arbitrariness or bad faith. *See State v. Mitchell*, 164 *N.J.Super.* 198 (App.Div.1978).

The role of the prosecutor as an arm of the executive branch of government lends further support to a narrow construction of *N.J.S.A.* 24:21–27. As discussed previously, the Legislature limited this avenue of diversion to a specific class of offenders. This court would be extending the statute beyond its express scope if Telcher was conditionally discharged. The court would also, in this context, be countermanding the prosecutor's prior determination not to recommend Telcher for PTI diversion. In view of the balance that should be carefully maintained between governmental branches, it would be highly undesirable and inappropriate for the judicial branch of government to act at cross purposes to the executive branch, as represented by the prosecutor, where a determination has already been made

---

[3]Formerly *R.S.* 2:182–1 *et seq.,* now *N.J.S.A.* 2A:158–1 *et seq.*

by the prosecutor that the value of supervisory treatment was outweighed by the public need for prosecution.

For the reasons expressed, this court finds that Janice Telcher is not eligible for consideration under the conditional discharge provision of *N.J.S.A.* 24:21-27. The motion for a suspension of proceedings is denied.